**COMMERCIAL CREDIT CO., Inc., v. AMERICAN MFG. CO. et al.**

No. 14277.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 10, 1941.

Rehearing Denied Nov. 14, 1941.

Heaton, Mules, Ireton & Hatch, of Baltimore, Md., and Cantey, Hanger, McMahon, McKnight & Johnson and Carlisle Cravens, all of Fort Worth, for appellant.

Slay & Simon and Richard U. Simon, all of Fort Worth, for appellees.

SPEER, Justice.

Commercial Credit Company, a corporation, to which we shall refer as appellant, instituted this suit against American Manufacturing Company, a corporation, referred to as appellee, Forest Green and Joseph A. Farry, to recover the value of an automobile, alleged to be $800.

No process was served on Farry and he was dismissed from the suit. The case was tried to the court and judgment was entered against appellant (Commercial Credit Co.) and in favor of appellee (American Manufacturing Co.) and Green for recovery of their costs. From that judgment appellant has perfected this appeal.

From the pleadings and stipulated facts, a statement of the points presented for reversal may be summarized as follows:

On October 2d, 1939, Farry purchased a new Dodge automobile from Alexander Motor Co., and executed his note for $984, as a part of the purchase money; at the same time he executed a chattel mortgage lien on the car to secure the payment of the note in instalments of $41 per month. Appellant did not file its mortgage in the county clerk's office in any county in the State. On the same day, Alexander Motor Co. sold and transferred the note and lien to appellant. On that day Farry made application to the Department of Public Safety for a certificate of title; the application was accompanied by Farry's sworn statement to the effect that he was the owner and that the car was encumbered by appellant's lien. The application complied in every respect with the requirements of House Bill 407, 46th Legislature, Vernon's Ann.P.C. art. 1436—1, effective October 1, 1939. In due time the Department issued to Farry the title certificate showing appellant's lien, and furnished the necessary highway license plates. Farry made two monthly instalment payments and quit. At some time between October 2, 1939, and November 7th, following, without the knowledge or consent of appellant, Farry went to Michigan and in that State, on the last mentioned date, made application to the proper authorities for a certificate of ownership and title to the car, and procured the certificate, upon which the encumbrance of appellant did not appear. The certificate from Michigan, issued by the Secretary of State, recites, among other things, that it was issued upon the sworn application of Joseph A. Farry, disclosing that he was the owner of the car and that his ownership thereto was subject to the liens and encumbrances shown therein and no others. In the face of the certificate, in space for description of liens and encumbrances, the word "None" appears.

On November 28, 1939, Farry, having previously procured the certificate of ownership from the State of Michigan which showed no liens or encumbrances on the car, and having had attached to the car the highway numbers issued by that State, sold and transferred the motor vehicle to Forest Green for a consideration of $750 in cash. Farry executed to Green a bill of sale for the car and made application to the Texas Department of Public

Safety for a certificate of title. The application was made upon Farry's oath that he was the owner of the car and that no liens or encumbrances were against it; the certificate of ownership was issued and showed no liens on the car; the certificate was delivered to Green and he procured Texas Highway license numbers and put them on the car. On January 20, 1940, Green, a dealer in second hand cars, exhibited his certificate of title, which showed no liens thereon, to appellee (American Manufacturing Co.) and sold to it the car bearing the Texas Highway numbers, for a cash consideration of $800, and transferred the certificate of ownership and the title to the purchaser. Neither appellee nor Green had any actual knowledge of the existence of appellant's debt and lien and had no constructive knowledge thereof, except such as would be imputed to them by the recitations contained in the certificate of ownership issued to Farry under his application of October 2, 1939. Neither appellant nor Green had any actual knowledge of the existence of the first certificate of ownership to Farry. Appellant had no actual knowledge of any of the transactions of Farry in procuring the Michigan certificate of ownership, nor of the subsequent application by him to the Department of Public Safety for the second certificate of ownership and title, nor of the sale by Farry to Green, nor of the sale and transfer from Green to appellant.

The trial court filed complete findings of fact and conclusions of law. He found the facts to be substantially in the language of the stipulations of the parties and concluded as a matter of law that by the passage of House Bill 407 (Art. 1436—1, Vernon's Ann.P.C.) the Legislature did not intend to repeal existing chattel mortgage registration statutes contained in Art. 5490 et seq., Vernon's Ann.Civ.St., but that they are and were at the times involved, in full force and effect. That it was necessary, under the provisions of those statutes, for the mortgagee (appellant) to properly register its mortgage in the office of the County Clerk before it would be effective as against the appellees, who were admittedly innocent purchasers. Court further stated that if mistaken in the conclusion first announced, that the Department of Safety had issued two certificates of ownership to the same person on the same car, the first one showing the debt and lien of appellant and the second

showed neither. That the defendant Green purchased the car in good faith for a valuable consideration and took a transfer thereof in conformity to the applicable statutes. That Green relied upon the Michigan certificate of ownership and that he was not negligent in doing so, and that he followed the provisions of House Bill 407 in procuring a new certificate of title, and therefore he should be protected against the lien of appellant. The court further concluded that since defendant American Manufacturing Co. purchased from Green and relied upon Green's title, as disclosed by his certificate of ownership issued by the Department of Public Safety, which did not show appellant's lien, as required by the new Act, it would not be charged with notice of the existence of the encumbrance. Upon these conclusions, judgment was entered as above indicated.

■ As we view the record before us, the controlling question for our determination is: "Did House Bill No. 407 of the 46th Legislature, now Article 1436—1 of Texas Penal Code, known as the Certificate of Title Act, effective October 1, 1939, repeal and supersede those parts of Articles 5490, 5497 and 5497a R.C.S., insofar as those Articles affect the registration of chattel mortgage liens on motor vehicles?" We have concluded that the question should be answered in the affirmative, and shall presently attempt to demonstrate why we have so decided.

■ The point is one upon which our appellate courts have not spoken, insofar as we are able to ascertain. We must therefore find the answer by the application of our settled rules of statutory construction. One of the earliest tests in such matters seems to be that we must "'try out the right to intendment' of the law, and, when found, to observe and follow it though there may be a conflict between its intent and words." Russell v. Farquhar, 55 Tex. 355; McInery v. City of Galveston, 58 Tex. 334; Edwards v. Morton, 92 Tex. 152, 46 S.W. 792. The rule thus expressed is still the law in this State. Board of Insurance Commissioners v. Sproles Motor Freight Lines, Tex.Civ.App., 94 S.W.2d 769, writ refused.

By the provisions of Article 5490, R.C.S., insofar as applicable here, all chattel mortgage liens are void as to subsequent purchasers in good faith, unless the mortgagee shall forthwith file his mortgage in the office of the county clerk where the property is situated.

By Article 5497 it is said that when a mortgagee has so filed his chattel mortgage, all persons shall thereby be charged with notice of the rights of the mortgagee.

Article 5497a refers to liens on motor vehicles and provides that when the chattel mortgage has been filed as provided by the preceding articles, such lien is superior to all other creditors (whose liens had not been previously registered) even though the motor vehicle upon which the lien had been given is exposed for sale. However, such lien would be void as to bona fide purchasers of the vehicle if daily exposed for sale.

■ It is a well settled rule of law in this State that a chattel mortgage lien on personal property is good between the parties whether registered or not. It is only by virtue of Article 5490 that it is made void as to innocent purchasers and lienholders in good faith when not registered. It has frequently been held that under the provisions of the articles above referred to, priority of liens will be given in the order of their registration.

House Bill No. 407, effective at all times since the controversy in this case arose, is a lengthy and very comprehensive Act. It covers eight and one-half pages of the Penal Code and is made up of 64 sections. Apparently it covers every period in the life of an automobile from the time it is offered for sale to a user until worn out, dismantled and discarded. This embraces its first sale, as well as all subsequent ones, mortgage liens, certificate of title by the Department of Public Safety to each consecutive owner and a complete identification of the motor vehicle. We shall have occasion to refer more specifically to some provisions of the Act.

The first section of House Bill 407 provides, among other things, that the legislative intent by the passage of the Act is to prevent theft of motor vehicles and the importation into the state of and traffic in stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which it stands as security. The emergency clause likewise sheds some light on the purpose and intent the Legislature had in mind when the law was enacted. After reciting some of the things sought to be remedied by the Act, this is

added: " * * * and that many liens have been created against motor vehicles to the serious financial loss of a large number of persons, and the fact that an early adoption of this Act will operate to materially safeguard dealing in motor vehicles and using the same as security * * * ", Acts 1939, p. 612, § 66, creates an emergency, etc.

By Section 24 provisions are made for the issuance by the Department of Public Safety of certificates of title when application therefor has been made on the forms provided by that Department. Among the requirements are: The name and address of the purchaser and seller at first sale or transferee and transferer at any subsequent sale; the make, body type, motor number, serial number and the names and addresses and dates of any liens on the motor vehicle in chronological order of recordation.

To draw a proper comparison between the provisions of the new Act and the law on the same subject found in Articles 5490, 5497 and 5497a above referred to, it is necessary to quote certain sections of House Bill 407. They are:

"Sec. 41. No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufacturer's certificate the date, name, and address of the mortgagees whose rights arise out of or are incident to such first sale by reason of the execution of any written instrument by the transferee."

"Sec. 42. No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon."

"Sec. 44. No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act."

"Sec. 46. Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor in so far as concerns the motor vehicle."

House Bill No. 407 as a whole indicates conclusively that the Legislature believed the chattel mortgage registration laws theretofore existing, insofar as they affected motor vehicles, were inadequate for the protection of lienholders and innocent purchasers for value. This, for the reason if, under the registration Act, a mortgagee filed his mortgage in the office of the county clerk of the county where the property is situated, and in some cases where the mortgagor resided, it became constructive notice to every person. It may be assumed that the Legislature was cognizant of the fact that mortgagors of automobiles frequently changed the county of their residence and that under existing laws the mortgage may not be registered at a given time in the county of the new residence. A purchaser would as well accept the word of the seller of a car that there was no lien on it, as to accept his word as to the county of his residence, under the circumstances related. It would perhaps be impracticable to require prospective purchasers to make search of the records in numerous counties to ascertain if the car was encumbered. To remedy the shortcomings of the previous law on the subject, the new Act under consideration was passed.

By Section 51 of the Act it is made unlawful for any person to sell or offer for sale any motor vehicle without having in his possession the Certificate of Title therein provided for; and by Section 53 it is declared that all sales made in violation of the Act are void and that no title passes thereby. It will be observed that under the provisions of Sections 41, 42, 44 and 46, above quoted, only liens disclosed by the Certificate of Title are valid. Since no valid sale of the vehicle could be made without the certificate of title and since no lien is valid unless shown on the certificate, a purchaser could not be deceived by failing to learn of the existing encumbrance. We ·construe House Bill 407 to definitely declare that no valid lien can be asserted against a motor vehicle unless it is disclosed by a valid certificate of title regularly issued by the Department of Public Safety, even though an asserted lien has been previously filed in the office of the county clerk as provided by the registration statutes. Prior to the new Act, registration of chattel mortgages was only for the purpose of giving constructive notice to innocent purchasers and lienholders for value. Under House Bill 407 it is clearly stated that no lien on a motor vehicle is valid unless shown in the certificate of title;

this is the notice afforded to innocent purchasers and they are not bound by constructive notice given by the registration of a mortgage lien in a county which, perhaps, the purchaser never knew or could have known was one in which the car was situated when a mortgage lien was executed.

■ Insofar as the validity of liens on motor vehicles, as against innocent purchasers, is concerned, the provisions of House Bill 407 and the prior laws contained in Article 5490 et seq. are repugnant to and in conflict with each other. It is contended by appellee that neither is inconsistent with the other but that both may stand; that is, the law as it now exists requires that mortgage liens be registered in the office of the county clerk and also shown on the certificate of title. We do not so construe them, nor do we believe the Legislature so intended when it passed the last Act. It is not uncommon when the Legislature passes an Act intended to be cumulative of other rights and remedies, to so indicate it. Moreover, House Bill 407 is a penal statute covering a very broad field and by its nature creates a system for dealing in motor vehicles and creating liens thereon and definitely sets out each step necessary to be taken and limits the validity of each act to those prescribed therein. We cannot believe that the Legislature would have passed this all-covering and comprehensive final Act intending to leave it susceptible of such construction.

■■ We are not unaware of the general rule of law in this State which holds that repeals by implication are not favored. But as early as Rogers v. Watrous, 8 Tex. 62, 58 Am.Dec. 100, and by numerous cases on down to recent dates, it was announced that subsequent statutes revising the subject matter of former ones, and evidently intended as a substitute for them, although containing no express words to that effect, must operate to repeal those going before. This rule was followed by the Commission of Appeals in First Nat. Bank v. Lee County Cotton Oil Co., 274 S.W. 127, where the authorities are collated over a period of seventy-five years. See also Meek v. Wheeler County, 135 Tex. 454, 125 S.W.2d 331, approved by the Supreme Court, 135 Tex. 454, 144 S.W.2d 885.

■ There is yet another reason why we are convinced that the Legislature intended the new Act should supersede the former chattel mortgage lien registration Act applicable to motor vehicles. The new Act contains a general repealing clause, in these words: "All acts or parts of acts inconsistent with the provisions of this Act are hereby repealed." Such a clause has been held by our Supreme Court to effectively repeal all prior enactments which are inconsistent with or repugnant to the provisions of the later statute. In Gaddis et al. v. Terrell, Land Commissioner, 101 Tex. 574, 110 S.W. 429, the court said: "It is clear that there is [in that case] no express repeal; that is, the provision in question is not directly pointed out as expressly repealed. But since the effect of a general provision repealing conflicting laws evinces that the Legislature had in mind that something was to be repealed, the 'courts will be less inclined against recognizing repugnancy in applying such statutes.' "

On October 9, 1939, after House Bill 407 became effective, the Attorney General of Texas gave an opinion to the Auditor of Tarrant County, in which he held that the registration laws pertaining to chattel mortgages on motor vehicles were repealed by the new Act. We believe the reasoning presented in that opinion is sound and much that we have said in this opinion is based upon points there made and the authorities cited.

The 47th Legislature, Acts 1941, c. 187, § 7, has now definitely repealed those parts of Article 5490, R.C.S., insofar as they affect the filing and recording of liens on motor vehicles and it is not likely that the question now before us will arise again but we have felt justified in this discussion because of the property rights involved in this case.

We do not agree with the second theory set out in the trial court's conclusions as a basis for the judgment rendered. It appears that the court believed that either conclusion as expressed by him would support a judgment for the defendants. We have already indicated that the effect of House Bill 407 was to supersede and repeal prior laws relating to registration of chattel mortgage liens. As a second reason for rendering the judgment, the court in effect stated that in his judgment the issuance by the Department of Public Safety of the second certificate of title to Farry in which appellant's lien was not revealed and because Green in good faith relied upon it, and thereafter when Green procured a similar certificate in his own name and American Manufacturing Co., in good faith, relied upon it, when the car was transferred by Green, that neither of the defendants should

be held because of appellant's lien. The court further expressed the opinion that the issuance by the Department of the second and third certificates in effect cancelled and revoked the original one to Farry, in which appellant's lien was shown.

It is conceded by all that neither of the parties to this appeal has done any intentional wrong in the matters in controversy. It is evident that both cannot prevail— one side or the other must lose. It seems to us that appellant has done all the law contemplates that it should do; that is, satisfied itself that its lien was recited in the first certificate of title. Under the law, this was notice to the public of the existing encumbrance. Under our construction of the law, the lien continued valid until the records of the Department showed it satisfied and a new certificate issued upon legal authority.

By Section 30 of the Act, it is provided that no certificate of title shall issue until the applicant shall have disclosed by his affidavit in writing that he is the owner of the car and show whether or not there are any liens or encumbrances against it. By Section 33, it is provided that no subsequent sale and transfer of the motor vehicle shall be made until the seller makes affidavit that he is the owner of the car and that there are no encumbrances thereon except those shown in the affidavit. By Section 47, it is provided that when encumbrances shown in the certificate have been satisfied, the mortgagee shall acknowledge before a Notary Public that the lien has been discharged, which instrument with the certificate of title may be presented to the designated agent of the Department, along with another application for certificate of title and thereafter he shall receive a new certificate. Under subdivision (a) of Section 38 it is provided that a certificate of title may be revoked if the application upon which it was issued contains false statements. And by Section 53 it is provided that sales made in violation of the Act shall be void and no title to the vehicle passes thereunder.

From what we have said relative to the provisions of the Act, it occurs to us that the improvident issuance by the Department of subsequent certificates, under the circumstances revealed by the stipulated facts in this case, should not be given the effect to deprive appellant of its security. To do so would amount to conferring power upon the Department of Public Safety to deprive appellant of its property without legal authority to do so. All subsequent certificates to Farry which did not show the

encumbrance were undoubtedly procured by false statements in the several affidavits. The certificate procured in Michigan was subject to the same vice. It follows that such title as was acquired by either Green or the American Manufacturing Co. depended upon the title of Farry; they procured no better title than Farry could convey. As harsh as it may seem, when appellant has neglected no duty encumbent upon it, and defendants have acquired a car from one who had title only subject to appellant's rights, if either must lose it should be the one who, though without intention of doing a wrong, accepted a doubtful title.

For the reasons stated, the judgment entered by the trial court was improper and we therefore reverse it and here render judgment for appellant Commercial Credit Co. against defendants American Manufacturing Co. and Forest Green, jointly and severally, for $800, the agreed value of the car, together with interest thereon at six per cent per annum from November 28, 1939, the date on which Green converted it. Judgment is also rendered in favor of American Manufacturing Co. on its cross action against Forest Green for any and all sums it shall be required to pay in satisfaction of the judgment in favor of appellant.

Judgment of the trial court is reversed and here rendered as above indicated.