SERVICE FINANCE CORPORATION ET AL V. JASPER SINGLETON.

No. 7952. Decided October 21, 1942.
Rehearing overruled December 9, 1942.
(166 S. W., 2d Series, 98.)

H. D. *Barrow* and R. R. *Smith,* both of Jourdanton, for petitioners.

It was error for the Court of Civil Appeals to hold that Article 5497a applies to chattel mortgages given on automobiles at a time when said motor vehicle was not exposed for sale, but which was sold by the mortgagor, after the mortgage had been recorded and without the knowledge, consent or acquiesence or contemplation of the mortgagee at the time the mortgage was given and accepted, or afterward. Laredo Natl. Bank v. Steinhardt, 15 S. W. (2d) 130; Ossheer v. Tandy, 32 S. W. 372; Krower v. Martin, 184 S. W. 511.

*J. W. Ragsdale,* of Victoria, and *Cullen V. Vance,* of Edna, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

Jasper Singleton brought this suit for actual and exemplary damages for the conversion of an automobile by Service Finance

Corporation and Bert Wilcut. Respondent alleged that on or about May 16, 1939, he purchased for cash a Chrysler automobile from W. A. Utzman, an automobile dealer; that he purchased the automobile without the knowledge that any lien existed against it; that such automobile on the date of purchase and prior thereto had been daily exposed for sale by W. A. Utzman, and that consequently he was a bona fide purchaser thereof within the meaning of Article 5497a Vernon's Annotated Civil Statutes, and that any mortgage or claim that the Service Finance Corporation had against it at the time he purchased same was void and unenforcible. Petitioners alleged that W. A. Utzman purchased this automobile from W. J. Brewer at Victoria, Texas, and that he executed a note and chattel mortgage lien for the purchase money thereof, and that such note and mortgage had been transferred to the Service Finance Corporation. They further alleged that the purchase money for such automobile had not been paid, and that they had taken possession of said automobile and later removed it from Jackson County, and same was sold in compliance with the terms contained in the note and mortgage held by the Service Finance Corporation.

At the close of the testimony the petitioners requested an instructed verdict in their favor, which was refused. The jury found that respondent was an innocent purchaser of the automobile, and that the market value thereof was $700.00. They further found the sum of $1,250.00 as exemplary damages. The trial court entered judgment in favor of respondent against the petitioners, jointly and severally, for those amounts, and the judgment of the trial court was affirmed by the Court of Civil Appeals. 155 S. W. (2d) 955. A writ of error was granted.

On September 13, 1938, W. A. Utzman executed a chattel mortgage, placing a lien upon the automobile in controversy to secure a note executed by him in the sum of $758.00, due in certain installments. The mortgage, among other things, provided that the mortgagor would not attempt to sell, assign, or dispose of said automobile without the written consent of the mortgagee; and it also provided that "in case default be made in the payment of said debt, or interest or any installment of said note * * * the whole amount herein secured remaining unpaid shall at once become due and payable, and said mortgagee may without notice foreclose this mortgage, by court action or otherwise, and said mortgagee or its agent is hereby

authorized to enter upon the premises where said goods and chattels may be and remove and sell the same and all equity of redemption to the mortgagor therein, either at public auction at the courthouse door of any county in the State of Texas or elsewhere, or by private sale without notice for cash or on credit, at such place as the mortgagee or holder may elect, without demand for performance, * * *."

Said note and mortgage were assigned by the said W. J. Brewer to the Service Finance Corporation; which was the legal owner and holder of said note and mortgage at the time the automobile was repossessed by Bert Wilcut.

It is undisputed that the note secured by the chattel mortgage had not been fully paid, and that default had been made in the payment of the installments of said note when due.

It is not contended that the lien held by the Service Finance Corporation on this automobile was not a valid and binding lien when executed. Nor is it contended that the Service Finance Corporation authorized Utzman to make the sale as he did. The chattel mortgage given for the purchase money of this automobile was duly registered with the County Clerk of Jackson County, where Utzman and Singleton resided, and where the automobile was situated.

The controlling question presented by this case is: Did respondent acquire title to the automobile free of the lien held by the Service Finance Corporation? If he did not, then the other questions become immaterial and need not be considered; unless it be shown that Service Finance Corporation exceeded the authority given it in the chattel mortgage in repossessing and selling the automobile.

Respondent relies as a defense to the note and chattel mortgage executed for the purchase money of the automobile at the time Utzman bought same from Brewer that he bought the automobile from Utzman, who was an automobile dealer, and that said automobile had been "daily exposed for sale," and that the note and chattel mortgage held by Service Finance Corporation were void by virtue of Article 5497a, which reads as follows:

"That all chattel mortgages hereafter given as security for money advanced for the purchase of motor vehicles shall, when

registered as required by law of chattel mortgages, be and are superior to the claim or claims of other creditors even though such motor vehicle or vehicles are daily exposed for sale. Provided, however, any such chattel mortgage shall be void as to bona fide purchasers when such motor vehicles are daily exposed for sale."

The object of the foregoing Article was to protect purchasers of motor vehicles when such vehicles were daily exposed for sale in a public place by dealers. In other words, it was intended that the title of such vehicles so purchased would be unencumbered by any lien of creditors.

If we assume, without deciding, that a valid lien acquired on an automobile, such as that acquired by the Service Finance Corporation in this instance, can be destroyed by the purchaser's daily exposing such automobile for sale in a public place along with other vehicles, still, under the facts contained in this record, respondent has not brought the transaction here under consideration within the provisions of Article 5497a.

We call attention to the fact that since the time of the above transaction the 46th Legislature adopted H. B. 407, now Article 1436-1 of Vernon's Texas Statutes, Penal Code; known as the Certificate of Title Act, effective October 1, 1939. See Commercial Credit Co., Inc., v. American Mfg. Co. et al (Civ. App.), 155 S. W. (2d) 834.

It is not shown that Utzman had a public place of business, where he daily exposed other vehicles for sale. At most it is shown that Utzman had the automobile on sale for about three months while he was driving it here and there for his own use; that for some time prior to its sale by Utzman to Singleton a "for sale" sign was placed on same; and that, according to Utzman's own testimony, the automobile was displayed on the street. It clearly appears that there was no testimony that this automobile was daily exposed for sale within the meaning of Article 5497a.

■ The first part of Article 5497a was intended to protect mortgagees who advanced money to automobile dealers with which to purchase motor vehicles, and to make the liens given to such mortgagees superior to those of other creditors, "even though such motor vehicle or vehicles are daily exposed for

sale." It is quite clear that the Legislature intended for the Article to apply only to dealers who were regularly engaged in the business of buying and selling automobiles; and that it was not intended for the Article to apply to a dealer whose automobile business was limited to the purchase and sale of a single car,—especially when such car was not daily exposed for sale in the usual manner that automobile dealers expose their cars for sale.

Giving the entire testimony introduced by respondent the most favorable construction, it fails to show that at the time the automobile was sold to Singleton it had been daily exposed for sale in a manner that would nullify the lien held by the Service Finance Corporation. Certainly it was not the intention of the law to destroy a valid lien on an automobile, such as the one shown by the facts and circumstances disclosed by this record.

■ The burden rested on respondent to establish that Utzman was a dealer in motor vehicles as contemplated by Article 5497a; that he was a bona fide purchaser of said automobile; and that same had been daily exposed for sale. It was necessary to do this to defeat the rights of the Service Finance Corporation specifically retained in the note and chattel mortgage. However, respondent failed to do this, and the undisputed testimony presents a question of law, and not a qustion of fact.

■ Respondent claimed exemplary damages because the automobile was taken from him and resold. It is undisputed that the Service Finance Corporation held the note and chattel mortgage executed by Utzman for the purchase money of this automobile, and that default had been made in the payment of the installments due on said note. Wilcut, an agent of the Service Finance Corporation, went to Edna, Texas, on November 28, 1939, to collect the amount due on the note or to repossess the automobile. He there learned for the first time that Utzman had sold the automobile to Singleton, and that Singleton had paid cash for it and was in possession of the automobile. Wilcut found the automobile parked in front of a residence in Edna, and without notifying Singleton or his wife, who was using the automobile, took possession of same and stored it in a garage. After doing so he immediately went back to the place where he had found the automobile, and told Singleton's wife that he had taken the automobile and why, and then, at

her request, took her to her home, several miles from Edna. Singleton and Wilcut then returned to Edna and tried to adjust the matters with Utzman and Brewer, but without avail. The automobile was left in storage for two or three days, and then, because of lack of storage facilities at Edna, it was taken to Victoria, where it remained in storage for about three weeks, while the interested parties endeavored to have the controversy amicably adjusted. Wilcut remained at Edna two or three days, hoping to make some arrangement whereby he would be enabled to return the automobile to Singleton; but his propositions were rejected. Singleton said he had paid for the automobile once, and he refused to make any further payments or sign any note. The automobile was later taken to San Antonio, where it was sold upon the request of the Service Finance Corporation. The proceeds from said sale failed to satisfy the amount due on the note. Under the state of this record the Service Finance Corporation, being the legal owner and holder of the note and chattel mortgage executed for the purchase money of this automobile, had the right to take possession of the automobile and to have the same sold for the payment of its debt. Article 5496, Vernon's Annotated Civil Statutes; Singer Sewing Machine Co. v. Rios, 96 Texas 174, 71 S. W. 275, 60 L. R. A. 143, 47 Am. St. Rep., 901; Kelley v. Wimbish (Tex. Civ. App.), 65 S. W. 386, 388; 9 Tex. Jur., p. 107, sec. 68.

To sustain the claim for exemplary damages in this case, it must be established that the Service Finance Corporation had lost its lien on the automobile and was not entitled to repossess and sell same. We think the undisputed facts clearly show that the lien was valid at the time the automobile was repossessed and sold. We find no testimony in this record, in the light of the undisputed facts, that would sustain a judgment for exemplary damages against the petitioners.

The judgments of the trial court and of the Court of Civil Appeals are both reversed, and judgment is here rendered that respondent take nothing in this suit.

Opinion delivered October 21, 1942.

Rehearing overruled December 9, 1942.