

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

This Opinion
Affirms Opinion
#__M-961__

February 28, 1974

The Honorable Jackie W. St. Clair
      Commissioner
Bureau of Labor Statistics
Sam Houston Building
Austin, Texas

Opinion No. H- 248

Re: Construction of H. B.
956, 62nd Leg., amending
Art. 5221f, V. T. C. S., and
H. B. 1193, 63rd Leg., both
relating to regulation of
mobile homes

Dear Mr. St. Clair:

    Your request for an opinion involves numerous questions pertaining
to the construction of Article 5221f, V. T. C. S., The Texas Mobile Homes
Standards Act, hereinafter called "the Act."

    Your first question asks:

> "Does H. B. 956, passed in 1971,
> amend in its entirety S. B. 153, otherwise
> known as the Uniform Standards Act for
> mobile homes?"

    It was decided in Attorney General Opinion M-961 (1971) that H. B.
956 completely revised and extended the scope of S. B. 153. The opinion
stated:

> ". . . In addition to providing standards for
> the installation of plumbing, heating, and
> electrical systems in mobile homes, the
> Article as amended also provides for uniform
> standards in requirements for the body and
> frame design and construction of mobile homes.
> Instead of requiring that dealers and manu-
> facturers of mobile homes be licensed, the

Article now provides for a system whereby manufacturers will be issued a certificate of acceptability upon certification that mobile homes will be manufactured in compliance with the established standards. Each mobile home manufactured and sold within the State must also bear a seal issued by the department which indicates that the mobile home was manufactured in compliance with uniform standards. The Article as amended further makes it unlawful to manufacture or sell a mobile home within the State except in compliance with the standards established pursuant to the Article.

". . . Although House Bill 956, does not contain a repealing clause, we are compelled to the conclusion that Article 5221(f) as amended is quite clearly intended to embrace the entire body of law on the subject of the regulation of the manufacture and sale of mobile homes. It is a complete substitute for the prior law on this subject and repeals the prior Act even though House Bill 956 contains no repealing clause. Commercial Code Co. v. American Manufacturing Co., 155 S. W. 2d 834 (Tex. Civ. App. 1941, error ref.); Luse v. The City of Dallas, 131 S. W. 2d 1074 (Tex. Civ. App. 1939, error ref.)."

We reaffirm that opinion.

Your second question asks:

"Under Section 3 part (f) of the above referred bill; is a board member entitled to $25. 00 per day plus all expenses incurred

> including travel, lodging, meals and all
> incidental expenses while on authorized
> business of the board without submitting
> receipts for his expenses?"

Article 5221f, § 3(f), provides as follows:

> "A member of the board is not entitled
> to salary for duties performed as a member
> of the board, but he shall be entitled to $25
> each day he is in attendance at meetings or
> hearings or on authorized business of the
> board, including time spent in traveling to and
> from the place of the meeting, hearing or other
> authorized business.  Each member of the
> board shall also be entitled to reimbursement
> for travel and other necessary expenses incurred
> in performing official duties. "

We believe that under the plain meaning of this statute the reimbursement
for travel expenses is in addition to the $25.00 per diem allowance.

Concerning the rate and manner of payment, we believe that your board
members come under the exceptions provided in § 15a of Article V of the current
Appropriations Act which provides as follows:

> "Judicial officers authorized by law
> and executive heads of State agencies, including
> the Executive Director of the Legislative
> Council, shall be reimbursed for their actual
> meals, lodging and airport parking fees
> (exclusive of expenses related to personally
> owned automobiles and commercial transpor-
> tation which shall be paid as provided under
> other sections of this Article) when traveling
> on official business either in or out of the
> State. "

Section 12(b)(1) of Article V of the Appropriation Act requires that expenses for public transportation be evidenced by receipts "excluding receipts for bus, taxi or limousine fares."

There is no requirement for receipts of any other expenditures.

Summing up, we believe that your board members are entitled to a $25 per diem allowance while on authorized business of the board plus actual expenses of travel (except that they are entitled to only 12¢ per mile for use of private automobiles) and that receipts for expenses are required only for public transportation with the exceptions stated above.

Your third question asks:

> "Does the Performance Certification Board have the authority under Section (3) Paragraph (h) to recommend to the Commissioner of the Bureau of Labor Statistics what positions they will require and how many people will be in each position to carry out the functions and duties assigned to it in this Act?"

Section 3(h) provides:

> "All staff assistance deemed necessary by the board to carry out the functions and duties assigned to it in this Act shall be provided by the department and shall function under the supervision of the administrative head of the department." (emphasis added)

The Performance Certification Board is an independent body appointed by the Governor with its functions and duties enumerated in the Act. However, it was not independently funded by the current Appropriation Act, (Acts 1973, 63rd Leg., ch. 659, pp. 1786, 1989). Instead, the funds necessary to carry out the Mobile Home Standards Act were placed in the budget of the Bureau of Labor Statistics.

The Act contemplates that the Board will set the standards and requirements for the industry and that the Department will enforce them. The Board functions within the structure of the Department.   It is therefore our opinion that the legislature intended by the statute that while the Board may recommend to the Commissioner of the Bureau of Labor Statistics what personnel requirements it deems necessary, overall financial responsibility for the Department rests with the Commissioner, and there is nothing in the Act that would require him to follow such recommendations.

Your fourth question asks:

> "Since H. B. 956 does not define 'person', our question is:  Does subparagraph (2) of Section (4) prohibit the sale of a mobile home in the State of Texas by anyone (citizen or consumer, dealer or manufacturer) unless that mobile home meets the plumbing, heating. and electrical code adopted by the Board? "

Section 4(a)(2) states:

> "It is unlawful for any person to sell or offer for sale within this State any mobile home manufactured after the effective date of this Act unless such mobile home meets the plumbing, heating and electrical installation requirements adopted by the board pursuant to this Act. "

The term "person" is not defined in this Act.  However, "person" was defined in Art. 5221f § 2(g) prior to its amendment as including all persons, partnerships and companies, corporations or associations engaged in manufacturing or selling mobile homes.   The Code Construction Act, Art. 5429b-2 § 1. 04 (2), V. T. C. S. , states:

> " 'person' includes corporation, orga-
> nization, government or governmental sub-
> division or agency, business trust, estate,
> trust, partnership, association, and any other
> legal entity. "

It is our opinion that Article 5221f, § 4(a)(2) prohibits the sale by any consumer, dealer or manufacturer of any mobile home manufactured after the effective date of the adoption of standards and requirements of installation of plumbing, heating and electrical systems unless the mobile home meets these requirements.

Your fifth question is:

> "In the event a person sells a mobile home
> that does not meet the code requirements, what
> legal action can this division (mobile home
> division) take against the alleged offender?"

Provided the mobile home in question is otherwise subject to the Act, this question is answered by the provisions of § 12(c) and (d) which state:

> "(c) The department may obtain injunctive
> relief from any court of competent jurisdiction
> to enjoin the sale or delivery of any mobile
> home in this state upon an affidavit of the depart-
> ment specifying the manner in which such mobile
> home does not conform to the requirements of this
> Act or to the rules and regulations issued by the
> department pursuant hereto.

> "(d) Any person who manufacture[r]s, sells,
> or offers for sale a mobile home in this state in
> violation of the provisions of this Act shall be
> guilty of a misdemeanor and upon conviction thereof
> shall be punishable by a fine not exceeding Two
> Hundred Dollars ($200) per day or by confinement
> not exceeding 30 days, or both. "

The Department may obtain an injunction to enjoin the sale of a mobile home that does not conform to the requirements set forth in the Act or to the rules and regulations issued by the Department.   A person who sells a mobile home in violation of the Act may be subject to a fine not exceeding $200 and/or confinement not exceeding 30 days.

Your sixth question asks:

> "Under Section (5) Paragraph (a) can a manufacturer in Texas ship mobile homes to other states without a certificate or State seal affixed to same?"

The applicable provisions of the Act are § § 5(a) and 7(a) which must be read together.   Section 5(a) provides:

> "It is unlawful for any manufacturer to manufacture mobile homes in this State more than twelve months after the formal adoption and promulgation of standards and requirements for the body and frame design and construction of mobile homes unless such manufacturer has been issued a certificate of acceptability for such mobile homes from the department.   This provision shall not, however, apply to mobile homes manufactured in this state and designated for delivery to and sale in a state that has a code that is inconsistent with this Act." (emphasis added)

Section 7(a) states:

> "No manufacturer who has received a certificate of acceptability from the department may sell or offer for sale in this State mobile homes unless such mobile homes bear the seal of approval issued by and purchased from the department." (emphasis added)

Section 2-106(1) of the Uniform Commercial Code defines sale as follows:

> "A 'sale' consists in the passing of title from the seller to the buyer for price (Section 2. 401). "

These provisions allow a Texas manufacturer to ship mobile homes to other states without a certificate or State seal if the homes are not sold or offered for sale in Texas.

Your seventh question states:

> "Under Section (5) Paragraph (c) can a dealer change or alter the construction of a mobile home prior to delivering of same such as cutting holes in the sidewalls for a room air conditioner or removing water heaters?"

Section 5(c) states:

> "No mobile home for which a certificate of acceptability had been issued shall be modified in any way prior to installation without prior written approval of the department. "

Under the provisions of this Section, a dealer may not make any changes or modifications in the body or frame design or construction or in the plumbing, heating or electrical systems of any mobile home prior to installation without approval of the Department. Of course, this provision applies to mobile homes manufactured after the effective date of the Act or the standards adopted by the Board.

Your questions 8 and 9 are related and therefore will be answered together They are as follows:

> "8. Under Section (6) can the department post a prohibited sales notice on a mobile home

at a dealers location when the unit does
not comply with the State Code or does not
meet the requirements of this Act?

"9.   If the dealer sells a unit posted
with a prohibited sales notice and delivers
it while the prohibited sales notice is still
in effect, what legal action can the depart-
ment take against the dealer under Section
(6) of this Act?"

Section 6 states:

"It is unlawful for any dealer within
or without this State to sell or offer for sale
to dealers or to the public of this State any
mobile home manufactured more than twelve
months after the adoption or promulgation of
the Code unless said mobile home complies
with the Code, bears a seal of approval issued
by the department, and is the manufactured
product of a manufacturer possessing a current
certificate of acceptability issued by the
department."

Section 6 requires a seal on any mobile home manufactured more than 12
months after the adoption of promulgation of standards and requirements by
the Board that is offered for sale within this State.

Subsection (e) of § 5 of the Act authorizes the Department to "make
and enforce rules and regulations reasonably required to effectuate the
provisions of this Act. . ." We believe that if rules and regulations are
properly promulgated under this provision contemplating the posting of a
prohibited sales notice on a mobile home at a dealer's location when the unit
does not comply with the state code or meet the requirements of the Act,
then such posting or tagging would be authorized.

Sections 12 (c) and (d), quoted above, provide the remedies available to the department if a dealer sells a unit posted with a prohibited sales notice and delivers it while the prohibited sales notice is still in effect.

Your tenth question asks:

> "Under Section (7) Paragraph (b) if a dealer acquires a used mobile home built prior to any code being adopted in Texas, is that dealer required to make modifications in order to meet the code in effect at the time he seals it and sells it?"

Section 3 of Chapter 896, 62nd Legislature, amending Article 5221(f) provides, "No mobile home manufactured or sold prior to the time limitation included in this Act shall be effected by its provisions. " (p. 2771) Section 7(b) of the amended Act states that, "Any dealer who has acquired a used mobile home without a seal may apply to the department for a seal along with an affidavit that the unit has been brought up or meets the Code." (emphasis added) "May" ordinarily connotes discretion or permission, and it will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in that sense. 53 Tex. Jur. 2d Statutes, § 16. Section 3 exempts any mobile home manufactured prior to the effective date of this Act and Section 7(b) of the amended Act is merely permissive. It allows but does not require the dealer to bring an exempted mobile home up the standards set by the Board and to thereby qualify the unit for a seal of approval issued by the Department.

Your eleventh question asks:

> "Under Section (12) Paragraph (d) again we have the question of the definition of 'person' referred to therein and whether this applies to a consumer or owner of a used mobile home?"

Section 12(d) provides in part:

> "Any person who manufacture[r]s, sells, or offers for sale a mobile home in this state in violation of the provisions of this Act shall be guilty of a misdemeanor. . ."

Article 5221f does not define the term "person," but as we pointed out in answer to your question number 4, the term "person" is construed to include a consumer or owner of a mobile home. Section 12(d) and § 4(a)(2) and (b)(2) make no distinction between the sale of new mobile homes and the sale of used mobile homes. If the mobile home, new or used, falls within a provision of this Act in being manufactured within the time limitations set out, it must meet the requirements.

Your twelfth question asks:

> "Under Section (12) Paragraph (a) who has authority to hold a hearing for alleged violations under this Act?"

Section 12(a) states:

> "Any manufacturer who violates or fails to comply with this Act shall be notified in writing setting forth facts describing the alleged violation and instructed to correct the violation within 60 days. Should the manufacturer fail to make the necessary correction(s) within the specified time, the department may, after notice and hearing, suspend or revoke any certificate of acceptability if it finds that:
>
> "(1) the manufacturer has failed to pay the fees authorized by this Act; or that
>
> "(2) the manufacturer, either knowingly or without the exercise of due care to prevent

the same, has violated any provision of
this Act or any regulation or order lawfully
made pursuant to and within the authority
of this Act.

"(b) The hearing shall be held upon
15 days' notice in writing setting forth the
time and place thereof and a concise state-
ment of the facts alleged to sustain the
suspension or revocation and its effective
date shall be set forth in a written order
accompanied by findings of fact and a copy
thereof shall be forthwith delivered to the
manufacturer. Such order, findings, and
the evidence considered by the department
shall be filed with the public records of the
department. " (emphasis added)

In accordance with § 12(a) and (b), it is clear that the department must
hold the hearing for alleged violations under the Act. As seen earlier the
Board sets the standards and requirements while the Department enforces
them.                                                                    /

Your thirteenth question asks:

"Can the Performance Certification
Board revoke or amend a rule promulgated
by the Bureau of Labor Statistics under
authority given the Bureau or Department in
Section (5) Paragraph (e)?"

Section 5 (e) states:

"The department shall make and
enforce rules and regulations reasonably
required to effectuate the provisions of
this Act and may amend or revoke any
rule it makes. "

Section 4 gives the Board the same rule making authority in setting standards and requirements necessary to protect the public.  As long as the Department's rules do not encroach upon the area reserved to the Board under § 4, only the Department may amend or revoke its rules.

The next three questions that you ask concern House Bill 1193 which amends Article 5221f by adding § § 14 through 17.  (H. B. 1193, Acts 1973, 63rd Legislature, Ch. 606, p. 1673).  The Act establishes standards for the anchoring, tying down, or securing of mobile homes.  The first two questions are related and therefore will be answered together.  They are as follows:

> 14.  "Do owners of existing mobile homes located in a mobile home park have to anchor their homes in accordance with the standards adopted on the effective date of this Act?"

> 15.  " If, after the effective date, an owner who has not met the requirements of the tie-down standards, later moves his mobile home, would he be required to meet the standards then in effect? "

The first part of § 14 requires the Performance Certification Board to establish minimum standards for the blocking, anchoring and securing of mobile homes.  Section 14 further states:

> "From and after one hundred eighty (180) days following the effective date of the minimum standards established and promulgated by the Board, or any subsequent changes or modifications thereof, no person shall occupy or inhabit any mobile home purchased after the effective date of such standards and which is situated or located within three hundred (300) feet of any other

> mobile home, residence, building or
> structure which is occupied or inhabited
> unless such mobile home is blocked,
> anchored or secured in accordance with
> such minimum standards." (emphasis
> added)

The provisions of this act are expressly made applicable only to mobile
homes purchased after the effective date of any rules and standards adopted
by the Board; and therefore, the act would not be applicable to a mobile
home existing at the time the Act goes into effect.  The fact that an owner
or occupant of a mobile home not covered by this Act moves or relocates
his home after the effective date of the rules, does not effect the answer.
The act only applies to mobile homes purchased after the effective date of
the rules and standards.

Your last question states:

> "Under Section (16) of H. B. 1193,
> which states the fee will be paid to the
> Board or the local governmental sub-
> division making the inspection, will this
> fee be paid to the department in a special
> fund to pay for the enforcement of this
> Act?  This question is asked because the
> Board employs no personnel of its own
> and use[s] the department's personnel
> to make the inspections?"

Section 16 of the Act authorizes the Board to set a fee, not to exceed
$10, for the inspection of mobile home tie down and anchoring devices.  It
further provides that the fee shall be paid by the owner of the mobile home
to the Board or to the local governmental subdivision making the actual
inspections.  There is no express provision in § 16 designating what fund
these fees are to be deposited to or who is to control them.

As noted earlier, H. B. 1193 amended Article 5221f by adding § § 14

through 17. These sections are, therefore, a part of the Mobile Homes Standards Act and must be read together with the Act.

Section 11 provides in part:

"(a) The board with the advice of the department shall establish a schedule of fees to pay the cost incurred by the department for the work relating to the administration and enforcement of this Act..

"(b). . ..

"(c). . . .

"(d) All fees shall be paid to the state treasury and placed in a special account for the use of the department in the administration and enforcement of this Act. "

Section 11(d) provides that the funds deposited into the Special Fund are to cover the cost of the administration and enforcement of the Act. The cost of tie-down equipment inspections would certainly be a proper part of this cost. Section 11(d) further provides that the Special Fund is for the use of the Department. This coupled with the fact that the funds appropriated to this Act are given to the Department and not the Board indicates that the Department has the use and control of these funds. It should be noted that the Department may not expend unappropriated money raised by fees set by the Board. It is limited to the amount appropriated by the Legislature. H-154 (1973).

### SUMMARY

1. Article 5221f, V. T. C. S., The Texas Mobile Homes Standards Act, (H. B. 956 and H. B. 1193) amends in its entirety S. B. 153, Acts 1969, 61st Leg., ch. 656, p. 1954.

2.  Under § 3(f), a board member is entitled to $25.00 per day plus a reimbursement for travel and other necessary expenses incurred in performing official duties.  In accordance with the Appropriations Act, H. B. 139, 1973, 63rd Leg., V-39, receipts for public transportation must be submitted.

3.  The Performance Certification Board has the authority under § 3(h) to recommend to the Commissioner of the Bureau of Labor Statistics what personnel requirements it deems necessary, but the Commissioner is not required to follow such recommendations.

4.  Section 4(2) prohibits the sale of a mobile home by a consumer, dealer, or manufacturer unless that mobile home meets the plumbing, heating and electrical code adopted by the Board.

5.  In the event a person sells a mobile home that does not meet the code requirements, the Department may obtain an injunction to enjoin the sale and the seller may be subject to a fine not exceeding $200 and/or confinement not exceeding 30 days under § 12(c) and (d).

6.  Under § 5(a), a Texas manufacturer may ship mobile homes to other states without a certificate or State seal if the homes were not sold or offered for sale in Texas.

7.  A dealer may not make any changes or modifications in a mobile home for which a certificate of acceptability has been issued prior to installation without approval of the Department in accordance with § 5(c).

8.   There is no prohibition in the Act that would prevent the Department from placing signs or notices on a mobile home prohibiting its sale.

9.   Section 7(b) is merely permissive in that it allows a dealer to bring an exempted mobile home up to the standards set by the Board and to thereby obtain a seal of approval.

10.   If a mobile home, new or used, is sold or offered for sale in violation of the provisions of the act, the seller is guilty of a misdemeanor under § 12(d).

11.   In accordance with § 12(a) and (b), the Department holds the hearings for alleged violations of the Act.

12.   Only the Department may amend or revoke a rule promulgated by it under § 5(c).

13.   Section 14 is only applicable to mobile homes purchased after the effective date of the rules and standards set out in accordance with the section.

14.   The fees collected by the Board or the local governmental subdivision are deposited into a fund and are appropriated for the cost of the administration of the Act by the Department.

Yours very truly,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee