NEW v. MALONE.

No. 32909.   Dec. 2, 1947.

Rehearing Denied Feb. 3, 1948.

*189 P. 2d 177.*

Kerr, Lambert & Conn, of Ada, for plaintiff in error.

Wimbish & Wimbish, of Ada, for defendant in error.

PER CURIAM.   This action was commenced by plaintiff in error, herein referred to as plaintiff, against defendant in error, for the possession of a Chevrolet automobile.

Plaintiff alleges a special ownership in and right to possession of the automobile by virtue of a chattel mortgage to secure a note in the sum of $868.80;

that on or about August 20, 1944, plaintiff, then the owner of said automobile, sold the same to one B. L. Franklin; that at the same time, said Franklin executed and delivered to plaintiff his chattel mortgage on said automobile to secure a note in said sum, which was a part of the purchase price. Said note was due and payable in ten monthly installments of $86.88 each, the first installment being due October 5, 1944; that said note and mortgage were assigned to G. D. Foster with full recourse on plaintiff, and on or about November 24, 1944, said note and mortgage were re-assigned to plaintiff; that all of said transactions took place in the State of Texas.

Plaintiff then pleaded certain sections of an act of the Texas Legislature, known and designated as the "Certificate of Title Act". Section 1 of said Act provides that:

"In the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent theft of motor vehicles, and the importation into this State of, and traffic in, stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security. . . ."

Plaintiff then pleaded en hac verbae sections 1, 1a, 24, 24a, 27, 31, 32, 32a, 33, 42, 43, 44, 45, 46, and 52 of said Act of the Legislature of the State of Texas. The material provisions of said sections will hereinafter be set out. Other usual allegations of actions in replevin under chattel mortgages were pleaded.

By unverified answer, defendant denied each and every allegation set forth in plaintiff's petition and specifically denied that the statute of the State of Texas as pleaded by plaintiff is sufficient to impart notice to defendant or any other person in the State of Oklahoma; that plaintiff had no claim, right, title, or interest in or to the property sued for in this cause.

A jury was impaneled to try the issues, but at the close of plaintiff's evidence, defendant's demurrer thereto was sustained and the cause was dismissed; and plaintiff appeals.

The record shows that plaintiff's mortgage was signed by the mortgagor but was not attested by any disinterested witnesses and was not filed for record with the county clerk of any county in the State of Texas and was not filed for record in the office of county clerk of Pontotoc county where this action was commenced.

The uncontradicted evidence was that defendant purchased said automobile on September 24, 1944, from one D. C. Speed, but does not show that Speed purchased it from Franklin or from any person claiming under Franklin.

When plaintiff offered his chattel mortgage in evidence, defendant objected thereto on the ground "that it is not properly executed and is executed in violation of the laws of the State of Oklahoma". The objection as stated was not good under decisions of this court in Lankford v. First Nat. Bank, 75 Okla. 159, 183 P. 56, and National Fire Ins. Co. v. Patterson, 170 Okla. 593, 41 P. 2d 645. Therein it was held that attestation or acknowledgment is only necessary in order to admit the mortgage to record. Furthermore, the unverified answer did not put in issue the allegations of the execution of the chattel mortgage. 12 O. S. 1941 §286; Anderson v. Intemann, 139 Okla. 278, 281 P. 977; Anderson v. Gunther Coke, Coal & Mining Co., 139 Okla. 102, 281 P. 982; J. I. Case Thresh. Mach. Co. v. Rennie, 71 Okla. 309, 177 P. 548.

Under Anderson v. Intemann, supra, it was not necessary to introduce the mortgage in evidence because: "In such case the instrument ordinarily finds its way into the evidence through the pleadings".

Defendant now contends that the question here is not whether the mortgagor executed the mortgage but wheth-

er or not it was entitled to registration or to be filed in the office of the county clerk; that under the laws of the State of Oklahoma it was not entitled to be filed, and if filed, was no notice to an innocent purchaser.

Plaintiff contends that under his pleadings and proof his mortgage lien was duly filed of record and was subject to record under the laws of the State of Texas and that his lien was protected in Oklahoma under such record for a period of 120 days after such registration and the removal of said automobile to the State of Oklahoma.

If the contention of plaintiff be correct, the court erred in its judgment dismissing plaintiff's action.

The uncontradicted evidence is that defendant purchased the automobile in question from one D. C. Speed, as a rebuilt motor vehicle, September 28, 1944, only 39 days after the alleged registration of plaintiff's mortgage lien in the State of Texas. In this connection, plaintiff alleged and proved certain provisions of the "Certificate of Title Act" of the State of Texas. As stated above section 1 of the act declares the legislative intent and public policy of the State of Texas in enacting the law to be, among other things, to lessen and prevent the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security, and that the provisions of said act singularly and collectively are to be liberally construed to that end.

Section 24 of the act, as pleaded and proved, defines the term "Certificate of Title" as meaning a written instrument which may be issued solely under the authority of the Highway Department (sec. 24a of the Act) and provides that such certificate of title must give the following data:

(a) The name of the purchaser and seller at first sale or transferee and transferrer at any subsequent sale.

(b) The make.

(c) The body type.

(d) The motor number.

(e) The serial number.

(f) The number of the license plate assigned thereto, whether in the State of Texas or any other state.

(g) The names and addresses and dates of any liens on the motor vehicle, in chronological order of recordation.

Section 27 of the act, as pleaded and proved, provides that before selling or disposing of any motor vehicle required to be registered or licensed in the state on any highway or public place, except with dealer's metal or cardboard license number, the owner shall make application to the designated agent in the county of his domicile for a certificate of title for such motor vehicle.

Section 31 of the act prescribes the duty of the designated agent of the state and requires such agent, upon receiving a proper application, to issue a receipt marked "Original" to the applicant and to note thereon the required information concerning the motor vehicle and the existence or non-existence of liens as described by the applicant, provided that if a lien is disclosed, said receipt shall be issued in duplicate, the one to be marked "Original" and the other "Duplicate Original", the first of which shall be mailed or delivered by such agent to the first lienholder as disclosed by the application. The copy marked "Duplicate Original" shall be mailed or delivered to the address of the applicant. Such duplicate original receipt authorizes the holder to operate the motor vehicle upon the highways of the state for a period of not more than ten days, which ten-day period may be renewed under rules and regulations of the Department.

By section 32 of the act, as pleaded and proved, the agent of the Department must, on the same day he issues the original and duplicate original re-

ceipts, forward to the Department a copy of the receipt issued by him together with such evidence of title as has been delivered to him, and the Department shall, within five days after receipt of such application, if satisfied of its regularity, issue a certificate of title marked "Original" on the face thereof and send same by first class mail to the applicant, provided that in the event there is a lien disclosed in the application, the certificate shall be issued in duplicate, one of which shall be marked "Original" and shall be mailed to the first lienholder as disclosed in said certificate of title, a copy of the certificate of title to be sent by first class mail to the applicant.

Section 33 of the act, pleaded and proved, provides that no motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title shall transfer said certificate of title, on a form to be prescribed by the Department, before a notary public, which form shall include, among such other matters as the Department may determine, a certificate to the effect that the signer is the owner of the motor vehicle and that there are no liens against such motor vehicle except as shown on the certificate of title, and no title to any motor vehicle shall pass or vest until such transfer be so executed.

Section 42 of the act, as pleaded and proved, by plaintiff provides:

"No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon."

Section 43 of the act, as pleaded and proved, provides:

"All liens on motor vehicles shall take priority according to the order of time the same are recorded on the re-

ceipt of certificate of title of all such recordings to be made by the Department."

Section 44 of the act, as pleaded and proved, provides:

"No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act."

Section 45 of the act, as pleaded and proved, provides:

"Exposure for sale of any motor vehicle by the owner thereof with the knowledge or consent of any mortgagee shall not affect the rights of any mortgagee as against all third parties."

Section 46 of the act, as pleaded and proved, provides:

"Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor or so far as concerns the motor vehicle."

Section 52 of the act, as pleaded and proved, makes it unlawful to buy or acquire any title, other than a lien in a motor vehicle registered or licensed in the state, without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be prescribed by the Department.

Section 53 of the act makes all sales in violation of the act void and provides that no title shall pass until the provisions of the act shall have been complied with.

In Motor Exchange v. Commercial Inv. Co., 151 Okla. 176, 3 P. 2d 178, this court held:

"Where a chattel mortgage is duly executed and filed in conformity to the laws of another state on property there located and the mortgaged property is

thereafter removed to this state, such mortgage is constructive notice to subsequent purchasers of the property in this state for a period of 120 days, and one who purchases the property at any time during that period does so with constructive notice of the mortgage and the mortgagee may maintain an action against the purchaser for conversion after the expiration of the 120-day period, notwithstanding the mortgage was not filed in this state within that time."

In Hinds v. Atlas Accept. Corp., 183 Okla. 134, 80 P. 2d 630, it is held:

"Where an automobile was sold under a conditional sales contract entered into in the State of Utah and the requirements of the laws of the State of Utah relative to such conveyances and recording such instruments have been fully complied with, and such automobile is brought into the State of Oklahoma by the purchaser and has remained in Oklahoma a less time than is provided in sections 11279 and 11906, O.S. 1931, for refiling such contracts and instruments in this state in order to protect the seller, and such automobile is subjected to attachment in Oklahoma in an action against the purchaser thereof, the rights under such attachment cannot prevail against the rights existing under the sales contract."

The decision in the Hinds case, supra, does not disclose fully what the laws of the State of Utah pleaded by defendant in error were, but examination of the case-made therein will disclose that the law relied on was that the only public officer or agency having or vested with authority in the State of Utah to register or record titles to motor vehicles or the transfer thereof was in the State Tax Commission, Department of Motor Vehicles, Salt Lake City, Utah. The certificate of title issued by the State Tax Commission showed under the heading "Lienholder or Legal Owner," Atlas Acc. Corp., 555 South Main, Salt Lake City, Utah, and showed the amount of the lien $562.46 and the nature thereof: "Title ret. contract", and the owner was listed as A. W. Wilson.

By 60 O.S. 1941 §318, it is provided that any instrument in writing or prom-issory note evidencing the conditional sale of personal property, which retains title in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers or the creditors of the vendor unless the original instrument or a true copy thereof shall have been deposited with the register of deeds (county clerk) in and for the county where the property shall be kept; and when so deposited it shall be subject to the law applicable to filing chattel mortgages. So far as the law of registration or filing is concerned, there is no substantial difference between the law relating to the filing or failing to file chattel mortgages and the statute relating to filing conditional sale contracts.

In Arnold et al. v. Wittie et al., 99 Okla. 236, 227 P. 132, it is held:

"Where mortgaged property, or property held by the vendee under a conditional sales contract, is brought into and permanently located in any county in this state, and the mortgage or conditional sale contract has been executed and recorded according to the laws of another state, the mortgagee or vendor will be protected as against creditors of the mortgagor or vendee for a period of 120 days; but such registration in another state ceases to be constructive notice after the expiration of 120 days from the time the property is permanently located in such county."

In the opinion it is said:

". . . In our view of the law it is not material whether the instrument be held to be a conditional sales contract or a chattel mortgage for the reason that the registration laws governing the registration of chattel mortgages is applicable to and controls the registration of conditional sales contracts."

In Greenville Nat. Bk. v. Evans-Snyder-Buel Co., 9 Okla. 353, 60 P. 249, a case decided prior to the adoption in the 1910 Revision of the proviso in 46 O.S. 1941 §58:

"Provided, that when a mortgaged chattel is moved into this state, or from

one county to another, any previous filing of the mortgage shall not operate as notice as against subsequent creditors, purchasers, mortgagees or incumbrancers for a longer period than one hundred and twenty days after such removal, but such mortgage must be refiled in the county to which the chattel is removed and in which it is permanently located,"

—it was held:

"A chattel mortgage duly executed and filed in conformity to the laws of another state or territory, on property which is at the time located therein, is superior to the rights of one who attaches the property in this Territory, after the property has been brought into this Territory, even though the mortgage is not filed in the office of the register of deeds of the county of this Territory wherein the property is situated prior to the levying of the attachment."

This was without limitation as to the time the property had remained in the Territory. In Arnold v. Wittie, supra, after reciting the history of the adoption of said proviso, it is said:

". . . .By the language of the proviso the law is recognized to be as laid down by Burwell, Justice, in the Greenville National Bank Case, but places a limitation upon the time in which the registration in another state shall constitute constructive notice in this state after the mortgaged property is moved into this state."

Therefore, the law is as stated in the Greenville National Bank Case, supra, that where property was mortgaged in another state and the mortgage recorded there, as provided by the laws of that state, the lien is protected in this state for a period of 120 days after the property is removed to this state.

Whatever the form or requirement of the statute with reference to the filing or recording, in order to validate a chattel mortgage as against persons specified in the statute where the mortgagor retains possession, it is necessary to comply with the statute. Upon the filing or recording of a chattel mort-

gage, the same becomes a substitute for the mortgagee's possession and obviates its necessity. 10 Am. Jur. p. 769.

In the instant case, the plaintiff proved complete compliance with the applicable laws of the State of Texas. Said laws pleaded and proved, so far as motor vehicles are concerned, provide a complete, comprehensive, and exclusive method of filing or registering and preservation of a chattel mortgage lien on such vehicles. Under that act, so far as motor vehicles are concerned, the law does not require the mortgage to be registered in the office of the county clerk and also shown on the certificate of title. The law does require the latter and also requires that a copy of the certificate of title be delivered or mailed to the first lienholder so that he may know that his lien is shown on the certificate of title obtained by any subsequent purchaser and so that such subsequent purchaser may know or have notice of the lien. Without that, the subsequent purchaser cannot obtain any title.

Under the record, plaintiff's lien was fully protected in Oklahoma for a period of 120 days after the automobile was removed to this state and any purchase or transfer thereof in this state within that period was void as against plaintiff's lien although plaintiff's mortgage was not filed of record in the State of Oklahoma within said period. Morgan v. Stanton Auto Co., 142 Okla. 116, 285 P. 962; Cassity v. First State Bank in Tonkawa, 143 Okla. 42, 287 P. 392; Motor Exchange v. Commercial Investment Co., supra.

Defendant calls attention to the fact that plaintiff did not obtain his assignment of the note and mortgage until more than 120 days after the automobile was brought into this state and that said assignment was not filed for record in this state nor in the State of Texas. In this connection, defendant cites 46 O.S. 1941 §63 which provides what must be set forth in an assignment of a chattel mortgage before such assign-

ment may be admitted to record. The assignment in question complies with these requirements and the statute does not require that it be filed or recorded. Defendant is not concerned with who was the owner and holder of the note and mortgage when he purchased the automobile in Oklahoma. Foster, the mortgagee, had a right to pursue and obtain possession of the vehicle and that right was not lost by his failure to file the chattel mortgage in Oklahoma within the 120-day period during which the defendant admittedly purchased in Oklahoma before the expiration of that time. Cassity v. First Nat. Bank, supra; Motor Exchange v. Commercial Inv. Co., supra. Foster, the mortgagee, had the right to and did assign to plaintiff the note and mortgage together with all his right, title, and interest therein. That assigned to plaintiff Foster's right to pursue and recover the automobile in Oklahoma as fully as Foster might have done.

Under the record, another question presents itself. The uncontradicted evidence is that defendant Malone purchased the automobile in question from D. C. Speed who was a stranger to the title. The rule appears to be that where a chattel mortgage is recorded in the domicile of the mortgagor, but not recorded in the county where it was sold, by one other than the owner or mortgagor, such purchaser acquires no title as against the mortgagee. It was so held in Couch v. Holmes, 151 Ala. 503.

In Wertheimer & Degen v. Shultice, 202 Iowa, 1140, 211 N.W. 568, it was held that a purchaser of mortgaged cattle from another than the mortgagor could not contest the mortgage for want of record without a showing that the seller purchased them from one to whom they had been sold by the mortgagor.

In Elliott v. Washington, 137 Mo. App. 526, 119 S.W. 42, it was held that the statute requiring recording of chattel mortgages does not deprive the mortgagee in an unrecorded mortgage of the right to assert a lien as against one who has purchased from a person other than the mortgagor. In Johnston v. Brown Bros., 208 Mo. App. 189, 231 S.W. 1011, it was held that a purchaser of an automobile from a third party who had no title to convey, acquired no interest under which he could assert the invalidity of a chattel mortgage thereon merely because such mortgage was unrecorded.

Under the rule stated in the above decisions, if defendant bought from a stranger to the title and not from the owner or mortgagor, he acquired no interest which he could assert against plaintiff's lien though it was not recorded.

If the vehicle is not in fact one covered by plaintiff's mortgage lien, but is a rebuilt automobile as asserted by Speed in his application for a certificate of title in Oklahoma, the plaintiff cannot recover. On the other hand, if the automobile in question is the automobile covered by plaintiff's lien, then under the record plaintiff was entitled to recover. The question of identity of the mortgaged vehicle is a question of fact for a jury.

The trial court erred in sustaining the demurrer to plaintiff's evidence and dismissing his action.

Reversed and remanded, with directions to grant plaintiff a new trial and for further proceedings not inconsistent with the views herein expressed.

HURST, C.J., and BAYLESS, WELCH, GIBSON, LUTTRELL, and ARNOLD, JJ., concur. DAVISON, V.C.J., and RILEY and CORN, JJ., dissent.