## CLANTON v. THIGPEN et al.
### No. 2752.

Court of Civil Appeals of Texas. Eastland.
Jan. 20, 1950.

Thomas & Thomas, Big Spring, for appellant.

Coffee & Coffee, Big Spring, for appellees.

LONG, Justice.

This case was submitted to the trial court upon the following agreed statement of facts:

"It is agreed between the parties hereto that Plaintiff, O. K. Thigpen, doing business as O. K. Motor Company at Knoxville, Tennessee, being the owner of one 1942 Model Buick automobile, Motor Number 44937675, delivered possession thereof to Roy I. Southerland and at said time the two instruments hereto marked Exhibits A and B were executed and a duplicate of the instrument marked Exhibit B was delivered to Roy I. Southerland at said time. These instruments being all the instruments executed by the plaintiff and Southerland in connection with the sale of the automobile to Southerland.

"That after Southerland had obtained possession of said Buick automobile he paid only one payment of $83.15 and thereafter without the knowledge or consent of plaintiff took the said automobile out of the State of Tennessee and into other States, and finally brought same into the State of Texas

and that the balance owing upon said automobile at said time was 14 installments of $83.15 each, and no part of which has been paid. The whereabouts of the automobile for a period of about three or four months was unknown to the plaintiff and it is agreed that the plaintiff used diligence in an effort to locate Roy I. Southerland and the said automobile.

"Finally when the automobile was located by the plaintiff it had been sold by Roy I. Southerland and purchased by the defendant herein, Morris Clanton. That Clanton paid $850.00 to Southerland for the said automobile, and at the time of purchase, Southerland presented certain purported evidences of title to the tax collector of Howard County, and on the basis thereof made application for Texas Certificate of title, and at the same time Southerland assigned such application to Morris Clanton and on the same date and at the same time and on the basis of Southerland's assignment of his application of title to him, Morris Clanton made application for a Texas Certificate of Title.

"That after the applications above referred to had been accepted by the Tax Collector of Howard County, and after same had been forwarded to the Texas Highway Department for approval and before the certificate of title itself was returned to Morris Clanton, Morris Clanton was notified by the plaintiff that the plaintiff was claiming the title to such automobile by virtue of his conditional sales to Southerland. Thereafter and after being notified by plaintiff and after the plaintiff had filed suit, Morris Clanton received a certificate of title from the Texas Highway Department and after having received said title, he afterwards sold said automobile and transferred its certificate of title to the purchaser thereof, and he does not now have possession of said automobile.

"Attached hereto and marked Exhibits C, D, E, and F, are photostatic copies of the instruments which were presented by Southerland to the Tax Collector of Howard County in connection with his application for title as well as the application for title made by Southerland as well as the assignment of such application by Southerland to Morris Clanton, as well as Morris Clanton's application for title and Certificate of Title issued thereon.

"It is further agreed that the State of Tennessee does not have a Certificate of Title law nor any central bureau for registering, filing and issuing title certificates to motor vehicles. That the usual and customary method of conveying title to automobiles in the State of Tennessee is by bill of sale, and the usual and customary evidence of ownership in the State of Tennessee are bills of sale and license receipts. That a conditional sales contract in the State of Tennessee is not construed as a mortgage, but such conditional sales contract is a valid retention of title in the vendor. Under the Tennessee Law it is not necessary or required to register such a contract as a chattel mortgage.

"It is further agreed that the said Buick automobile, at the time that it was disposed of by Morris Clanton and at all times pertinent to this cause of action, was of a fair market value of $1050.00."

Exhibit A is a bill of sale from Thigpen to Southerland in which it is shown that Southerland owed Thigpen on said car the sum of $1,247.25. This bill of sale was never delivered to Southerland. At the time of the execution of Exhibit A there was executed a conditional sale agreement wherein the same indebtedness is disclosed. A copy of this conditional sale agreement was delivered to Southerland.

Exhibit C is a bill of sale to Southerland covering the Buick automobile purported to be executed by one Carl F. Scates dated February 10, 1947.

Exhibit D is a certificate of registration executed in the State of Tennessee in the name of Roy I. Southerland.

Exhibit E is a transfer of such title certificate by Southerland to Morris Clanton.

Exhibit F is the application for title certificate executed by Morris Clanton covering the Buick automobile from which title certificate was issued in Texas.

Thigpen filed this suit against Morris Clanton and Roy I. Southerland to recover said automobile or, in the alternative, for a judgment for the value thereof. Clanton appeared and answered in said suit but no service was had upon Southerland and he was dismissed therefrom. Upon a trial before the court without a jury, judgment was rendered in favor of Thigpen against Clanton for the value of the automobile in the sum of $1,000.00. From this judgment, Clanton has appealed.

It is the contention of appellant that the court erred in rendering judgment against him for the reason that he was an innocent purchaser for value of the automobile and had no notice of a lien in favor of the appellee. The facts in this case are similar to the facts in the recent case of Bank of Atlanta v. Fretz et al., 226 S.W.2d 843, recently decided by our Supreme Court. Judge Sharp, in writing the opinion for that court, said:

"Article 1436—1, Vernon's Texas Statutes, 1948, Penal Code, was enacted for the protection of the public, and the provisions thereof are to be liberally construed to effectuate the purpose for which it was enacted. One of its chief objectives was to lessen and prevent the importation into this State of, and traffic in, stolen motor vehicles, and to prevent the sale of encumbered motor vehicles without the disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security.

"The spirit and purpose of this law is to prevent fraud; not to encourage it. It was not the intention of the Legislature by this Act to invalidate liens validly acquired in States which do not have a similar law, and this is especially true in the event a vehicle covered by a lien is wrongfully, without the knowledge or consent of the lienholder, removed from the State where the lien was acquired and brought to this State, and the owner by false and fraudulent representations obtains a certificate of title showing that no lien exists against the vehicle, so that he is thereby enabled to transfer the vehicle to an in-nocent purchaser for value without notice of the lien. If the Legislature had intended this, it could have stated that all liens acquired in other States not having certificate of title laws would be forfeited when the vehicle reaches the hands of an innocent purchaser for value in this State.

"If the State of Georgia had had a certificate of title law, it would have been the duty of petitioner to see that its lien was endorsed on the certificate of title issued in that State. Because the State of Georgia does not have such a law, valid liens acquired in that State should not be destroyed by dishonest methods, such as that practiced by Harris in this instance to obtain a certificate of title in Texas.

"The principles of fairness and commercial expediency support the rule that protects a mortgagee who holds a valid lien, which was acquired in another State, on a vehicle wrongfully removed from the State where the lien was acquired and brought into this State without the consent or knowledge of the mortgagee. Stumberg, in his Conflict of Laws, page 366, says:

'A majority of the courts feel that preference should be given the conditional vendor or mortgagee when the chattel is wrongfully removed from the state where it was originally sold and the law there has been complied with, because they think that it is better social policy to protect him against a person, who, although he is innocent, is claiming title through a wrongdoer whose wrongful act is beyond the effective control of the vendor or mortgagee.'

"Section 38 of this Act provides that the Highway Department may suspend or revoke a certificate of title if the application contains any false or fraudulent statement, or if the applicant fails to furnish required information, and it may refuse to issue a certificate of title if the applicant is not entitled to same."

It was agreed upon the trial of this case that the State of Tennessee does not have a certificate of title law nor central bureau for registering, filing and issuing a certificate of title to motor vehicles; that the usual and customary method of convey-

ing automobiles in the State of Tennessee is by bill of sale. The usual and customary evidences of ownership in that state are bills of sale and license receipts; that a conditional sales contract in the state of Tennessee is not construed as a mortgage but such conditional sales contract is a valid retention of title in the vendor. Under the Tennessee law it is not necessary to register such a contract as a chattel mortgage. It will thus be seen that Thigpen did everything that was required by the law of Tennessee to retain title to the automobile in question. The usual and customary evidence of ownership in that State being bills of sale and license receipts, then when Southerland appeared before the tax collector of Howard County it was necessary that he produce a bill of sale to the car together with a license receipt. This he did, but he did not present to the tax collector the bill of sale or conditional sale contract issued by Thigpen. The originals of Exhibits C, D, E and F were presented by Southerland to the tax collector as evidence of his title. If Southerland had presented to the tax collector the conditional sales contract which was delivered to him at the time he purchased the automobile, it would have disclosed that Thigpen had retained the title to such automobile. He did not do this, but presented a bill of sale issued by one Scates. Scates is a stranger to the title and there is no evidence that he had any claim whatsoever to the automobile. In other words, Southerland perpetrated a fraud when he failed to present to the tax collector of Howard County the conditional sales contract to the automobile issued by Thigpen and presented a bill of sale to the automobile executed by Scates, a stranger to the title. We believe that this case comes squarely under the rule announced in the case of Bank of Atlanta v. Fretz et al., supra, and that such case is decisive of the question here presented.

The trial court properly rendered judgment for Thigpen against Clanton for the value of the automobile.

The judgment is affirmed.

COLLINGS, J., not sitting.