WEST v. ASSOCIATES DISCOUNT CORP.

No. 34746.  Feb. 12, 1952.

*240 P. 2d 1077.*

Norman & Wheeler and Forrester Brewster, Muskogee, for plaintiff in error.

Elbert Hinds, Muskogee, for defendant in error.

BINGAMAN, J. This is an action in replevin brought by Associates Discount Corporation against the defendant, Clem West, to recover possession of an automobile. The plaintiff claimed title to the car by virtue of a sale under a conditional sales contract to a man named Terry, in the State of Tennessee. Terry removed the car from the State of Tennessee, without paying any of the installments due on the purchase price, sold it to other parties, and it eventually was sold to a secondhand dealer in the city of Muskogee, who sold it to the defendant, Clem West. West in his answer claimed the title to the automobile on the ground that he was an innocent purchaser without notice. The trial court rendered judgment in favor of plaintiff, and defendant appeals.

The facts are undisputed. From the record it appears that Terry purchased of Mid-Town Motors, a used car dealer in Memphis, Tennessee, the used Plymouth car involved in this action, upon which he owed a balance of $1,282.50, which was to be paid in 15 monthly installments. Mid-Town Motors and Terry executed a conditional sales contract in which Terry represented himself to be a resident of Tennessee, and which provided that title should remain in the seller until the contract was fully performed. The contract further provided that Terry would not remove the motor vehicle from the district in which he then resided, or part with the possession thereof, except upon the written consent of Mid-Town Motors. After purchasing the car Terry apparently sold it to other parties who took it to the State of Arkansas and sold it to Caddo Motor Company, of Arkadelphia, Arkansas, without revealing the fact that there was a balance due on the purchase price, or that the car was held under a conditional sales contract. Thereafter Caddo Motor Company sold the car to Hughes Motor Company of Ft. Smith, Arkansas, which in turn sold it to Joe Johnson Motor Company of Muskogee, from whom it was purchased by the defendant. All of these transfers were made without revealing in any way the fact that the car was under conditional sales contract or that there was a balance due to the original seller on the purchase price. After the car was disposed of by Terry he was arrested, and charged with the wrongful disposal of some 30 automobiles. Immediately upon the execution of the conditional sales con-

tract it was assigned to plaintiff by Mid-Town Motors.

The conditional sales contract was executed on October 24, 1947, and Terry was apprehended by the law on or about January 20, 1948. Immediately after his arrest he was interviewed by an official of the plaintiff in an attempt to ascertain the whereabouts of the automobile, but refused to divulge any information and shortly thereafter attempted to commit suicide. Thereafter he was repeatedly questioned as to the whereabouts of the automobile, but never divulged any information. Letters written by plaintiff to the motor vehicle departments of a number of states during the month of March, 1948, brought no results, and on April 16, 1948, letters were again written to the motor vehicle departments of a number of states, including Arkansas and Oklahoma. These, likewise, remained unanswered. On October 15, 1948, plaintiff had its branch offices in several states, including Little Rock, Arkansas, and Oklahoma City, Oklahoma, check with the motor vehicle departments of those states, and for the first time was advised that the car had been sold to Caddo Motor Company, then to Hughes Motor Company in Arkansas, and then to West. Immediately thereafter a certified copy of conditional sales contract was filed in Muskogee county and thereafter this action was brought. From the record it appears that West purchased the automobile from Joe Johnson Motor Company in Muskogee, some 45 days after that company purchased the car in Ft. Smith.

The decisive question presented is whether the conditional sales contract, which was not required to be recorded by the laws of Tennessee and was not filed for record in that state, should be held valid in this state as against a purchaser who bought the car without notice or knowledge of such contract.

Defendant contends that under 60 O. S. 1951 §318, and 46 O.S. 1951 §58, such contract is not valid as against a subsequent purchaser without notice, unless it has been previously filed in the state where it was made, and that it is contrary to our law and against public policy to permit a citizen of another state to enforce such a contract in this state. Plaintiff, on the other hand, contends that the contract being a valid contract under the laws of the State of Tennessee where it was made, and there being no requirement in that state that it be placed of record, its validity should be recognized by this state under the rule of comity.

In support of his contention defendant relied principally upon Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S. W. 1072, and Commercial Credit Co. v. Higbee, 92 Colo. 346, 20 P. 2d 543. However, it appears that the Texas case was departed from and in effect overruled by Clanton v. Thigpen, 226 S. W. 2d 850, in which the Court of Civil Appeals of Texas recognized and enforced an unrecorded conditional sales contract made in Tennessee, as against a subsequent purchaser without notice. It further appears that in Colorado, the Colorado Supreme Court has consistently refused to recognize the validity of a conditional sales contract even if the same was properly recorded in the state where made. Castle v. Commercial Inv. Trust Corp., 100 Colo. 191, 66 P. 2d 804.

It appears to be settled by the great weight of authority that a chattel mortgage or conditional sales contract, if made according to law in the state where the property is then situated and not made in contemplation of or with permission to remove the chattel sold to another state, is valid, and that the validity of the contract will be recognized and enforced in other states to which the property is removed by the buyer without the consent of the seller, as against persons designed to be protected by the registration laws of the state to which it is removed, unless such laws of such latter state apply to contracts made out of the state, in which event the contract can be made effective only by compliance with such laws. 55

C. J., p. 1265 § 1276; 14 C. J. S., p. 607 §15; 11 Am. Jur. p. 362, §77. In the latter authority it was said:

"Ordinarily, the validity and effect of a conditional sale, as regards both the parties and third persons, are governed by the law of the state in which the contract was made and the property was then situated."

And further in §78:

"Apart from failure to comply with the local statutes in regard to filing or recording conditional sales contracts, it is not generally regarded as contrary to public policy to enforce the title reserved by the vendor in a conditional sales contract, valid by the law of another state in which the contract was made and the property was then located, as against purchasers in good faith from, or creditors of, the vendee, whose rights attached after the property had been removed to the state of the forum."

Elaborate notes on the same subject may also be found in 148 A. L. R., p. 379, subd. 3, and 13 A. L. R. 2d., p. 1318, §7. To the same effect is Restatement, Conflict of Laws, §275.

In the annotation to 148 A. L. R., p. 379, the author states, with the exception of a few states like Colorado and Louisiana, where conditional sales contracts are given the effect of absolute sales, conditional sales contracts, retaining title in the vendor until the performance of the conditions, are recognized in most of the states and will be enforced in other states to which the property was removed without the consent of the seller as against purchaser in good faith from the vendee.

In Rodecker v. Jannah, 125 Wash. 137, 215 P. 364, the Supreme Court of Washington held valid a conditional sales contract made in California, in which state it was not required to be recorded, as against an innocent purchaser in Washington, to which state the chattels were removed without consent of the vendor.

In the recent case of Denkins Motor Co. v. Humphreys, 310 Ky. 344, 220 S. W. 2d 847, the Kentucky court held valid a conditional sales contract executed in Tennessee as against a subsequent purchaser for good faith in the State of Kentucky. Plaintiff cites no case, except the two first above noted, as holding to the contrary, and the rule appears to be almost universal, regardless of the fact that the contract was not required to be recorded under the laws of the state where made.

In New v. Malone, 199 Okla. 639, 189 P. 2d 177, we held valid, as against a purchaser without notice in this state, a chattel mortgage made in the State of Texas, which was not filed for record in that state, but of which record was made in the certificate of title issued by the Highway Department of Texas, the automobile being sold in this state some 39 days after registration of the plaintiff's mortgage lien in the Highway Department of Texas, but without knowledge on the part of the purchaser of the existence thereof. We said in that case that where the mortgage was executed and filed as required by the laws of the State of Texas, it would be recognized and enforced here, although not recorded in the office of the county clerk in that state, as required by our statutes above referred to. In this case, we in effect recognized the validity of an instrument of title or lien executed according to the laws of the state in which it was made, where the removal of the property from the state was not contemplated by the seller and it apparently was removed without his knowledge or consent.

In the instant case it appears that the State of Tennessee does not require the recording of the conditional sales contract, and had not made provision for any filing of the lien or contract with a central agency such as is required in Texas, but that the contract is valid as against the citizens of that state. Under the authorities above referred to, we think it should be given equal validity in this state, although under our statutes, above referred to, it is apparently contemplated that other states have or should have statutes requiring the registration or filing

of such contracts in a manner which would afford constructive notice to others.

We believe it is a matter of common knowledge that in the sale of used automobiles the purchaser seldom, if ever, delves into the past history of the car to ascertain whether in the state from which it was brought there are any liens or chattel mortgages against it. As stated in Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S. W. 2d 843, at the outset of travel by automobile the system of filing and recording mortgages on automobiles was simple and effective, but as time progressed, with the automobile industry becoming an immense commercial enterprise, such laws are of little value, and therefore the system of certificates of title have been adopted and are being constantly amended to make them more effective. In that case, quoting from Strumberg, Conflict of Laws, p. 366, the court says:

"A majority of the courts feel that preference should be given the conditional vendor or mortgagee when the chattel is wrongfully removed from the state where it was originally sold and the law there has been complied with, because they think that it is better social policy to protect him against a person, who, although he is innocent, is claiming title through a wrongdoer whose wrongful act is beyond the effective control of the vendor or mortgagee."

The trial court properly held the conditional sales contract of plaintiff valid against the claims of the defendant.

Defendant further contends that the plaintiff was guilty of lack of diligence amounting to laches in its failure to sooner track down and find the automobile in question. We are unable to agree with this contention. Plaintiff had no idea where or in what state the property was located or had been transported, and its repeated efforts to ascertain the whereabouts thereof met with failure until, in some way, which a witness for plaintiff could not recall, they received information to the effect that it had been sold to the Caddo Motor Company in Arkansas. Its witness testified that it thereupon contacted the Caddo Motor Company, but that that company refused to divulge the whereabouts of the automobile or to whom it was sold. Whereupon personal inquiry at the Highway Department offices in the States of Arkansas and Oklahoma revealed its present whereabouts. Plaintiff then recorded its contract in Muskogee county. Defendant purchased the automobile prior to the expiration of 120 days after the automobile was brought into this state and was therefore not entitled to the protection afforded by 46 O. S. 1951 §58. New v. Malone, supra, and authorities therein cited. Our conclusion is that plaintiff is not shown to have been guilty of such lack of diligence in attempting to recover the property as to support the defense of laches.

Affirmed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur.