THE SAUGERTIES BANK, Appellant, *v.* THE DELAWARE AND HUDSON COMPANY, Respondent.

Carriers — bills of lading — proximate cause — relation between act and results ordinarily question of fact — when cannot be said as matter of law that carrier should have anticipated that old and spent bills of lading might, by crime or forgery, be utilized as security for loan.

1. The act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it would have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act. If the con-

sequences were only made possible by the intervening act of a third party which could not have been reasonably anticipated then the sequential relation between act and results will not be regarded as so established as to come within the rule of proximate cause.

2. Ordinarily it is to be determined as a question of fact whether there has been such a connection between cause and effect as to make the former proximate.

3. Where a carrier delivered to a consignee merchandise without taking up the bills of lading, in violation of the provisions thereof and of section 365 of the Penal Law, and several months thereafter the consignee changed the dates of the bills, presented them to a bank as security for a loan which was granted thereon, and a short time thereafter failed, the bank cannot recover of the carrier the amount of its loss in the absence of a supportable finding of fact that the carrier should have anticipated what took place. Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of crime by some third party and while the carrier in leaving the bills outstanding might be charged, under a question of fact, with anticipation that they might be presently used although the merchandise had been delivered, it cannot be said as matter of law that it ought to have anticipated that bills of lading which had become absolutely stale and useless would be resurrected into a condition of life by the crime of forgery. (*Mairs* v. *Baltimore & Ohio R. R. Co.*, 175 N. Y. 409, followed.)

*Saugerties Bank* v. *Delaware & Hudson Co.*, 204 App. Div. 211, affirmed.

(Argued June 12, 1923; decided October 2, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 24, 1923, affirming a judgment in favor of defendant entered upon a decision of the court at a Trial Term without a jury directing a dismissal of the complaint.

*B. Jermain Savage* for appellant. Defendant in failing to exact surrender of the bills of lading violated not only its express contract, but also the Penal Law. (*Colgate* v. *Penn. Co.*, 102 N. Y. 120; *Burham* v. *Cape Vincent Seed Co.*, 142 N. Y. 159; *Furman* v. *U. P. R. R. Co.*, 106 N. Y. 579; *First Nat. Bank* v. *Kelly*, 57 N. Y. 34.) The railroad's contract not to deliver the property covered by

order bills of lading without exacting their surrender properly indorsed is designed to protect *bona fide* holders of the bills from exactly this misdelivery of the property to the consignee without obtaining the surrender of the bills, thereby opening the door to their subsequent negotiation to a lender on the faith of the railroad's contract. (*First Nat. Bank* v. *N. Y. C. & H. R. R. R. Co.*, 85 Hun, 160; *William* v. *D. & H. Co.*, 156 App. Div. 695; *Serat* v. *Utica, etc., Ry. Co.*, 102 N. Y. 681; *Colgate* v. *Penn. Co.*, 102 N. Y. 120; *Midland Nat. Bank* v. *M. P. R. Co.*, 132 Mo. 492; *Ratzer* v. *B. C. R. & N. Ry. Co.*, 64 Minn. 245; *Wells, Fargo & Co.* v. *Oregon R. & N. Co.*, 32 Fed. Rep. 51.) Defendant's violation of its contract and duty in delivering the grain without exacting the surrender of the order bills of lading is the cause of plaintiff's loss and defendant is liable therefor. (*Mortimer* v. *Otto*, 206 N. Y. 89; *Shaw* v. *R. R. Co.*, 101 U. S. 565; *Neal* v. *Rendall*, 98 Me. 69; *Ishman* v. *Dow*, 70 Vt. 588; *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195; *People's Trust Co.* v. *Smith*, 215 N. Y. 489.)

*Lewis E. Carr* for respondent. The erasure of the original dates in the bills of lading in question and the insertion of new and later dates therein by the consignor and consignee, and the use of them by it in their altered form as collateral to a loan it obtained from the plaintiff months after it had received and converted to its use the grain described therein, constituted and was a criminal act committed by such consignor and consignee. (*Ward* v. *N. Y. C. R. R. Co.*, 47 N. Y. 29; 2 Hutchinson on Carriers, 715, § 651; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195; *Van Pelt* v. *McGraw*, 4 N. Y. 110; *Filkins* v. *People*, 60 N. Y. 101.) The failure of the defendant to exact from Durant & Elmore Company the surrender to it of the bills of lading of the cars of grain in question when it delivered them to that company, or

upon and in accordance with its orders, was not the producing cause of the loan the plaintiff made to that company May 17, 1910, or of the loss for which it brought this action. The felonious acts of that company, in erasing their original dates and inserting new and later dates after it had received and converted to its use the grant described therein, and in uttering them to the plaintiff as security for such loan, were a new and independent cause therefor which bars the claim of the plaintiff against the defendant and denies its right to recover from the defendant any part of its demand. (*Nat. Com. Bank* v. *Lackawanna Transp. Co.*, 59 App. Div. 270; 172 N. Y. 596; *Mairs* v. *B. & O. R. R. Co.*, 175 N. Y. 409; *Furman* v. *U. P. R. R. Co.*, 106 N. Y. 579; *Shaw* v. *R. R. Co.*, 101 U. S. 587.)

HISCOCK, Ch. J.   During the months of July, August, September, October and November, 1909, there were delivered to a rail carrier at Buffalo a large number of cars of wheat for transportation and which were delivered to the defendant as the final carrier and by it transported to Oneonta.   This wheat was shipped under bills of lading issued at the time of shipment which were of the " order " character and in which a corporation known as the Durant & Elmore Company was named as consignor, consignee and party to be notified.   The wheat was delivered to the consignee at Oneonta a few days after shipment and upon its order subsequently shipped to other destinations and parties.   Although it was provided in the bills of lading themselves and also by the Penal Law (Sec. 365), that the wheat transported under these bills of lading should not be delivered without taking up the latter, the defendant as matter of fact delivered the wheat to the Durant & Elmore Company without surrender of the bills of lading.

The Durant & Elmore Company on May 17, 1910, was short alike of money and moral principles and so

it changed the dates of these bills of lading from dates which averaged several months prior to May 17, 1910, to dates which preceded that date by only a few days and then presented the bills to the plaintiff as security for a loan which was granted by it thereon. A short time thereafter the borrower failed and only a part of its loan having been paid plaintiff brought this action against defendant for damages because it would not and could not deliver the wheat covered by the bills of lading which had been thus taken as security. The question is whether the failure of defendant to take up the bills of lading on delivery of the wheat as it should have done was the proximate cause of plaintiff's loss. I do not think that it was.

It has either been found or is so established by the evidence as to be conceded that the bills of lading as they were left in the hands of the Durant & Elmore Company on the delivery of the wheat were " spent bills " and that their dates preceded the date when they were delivered to plaintiff as security by so long a period that the latter would have been put upon suspicion and required to make some inquiry concerning the situation and which inquiry, of course, would have led to the information that the wheat covered by the bills had been delivered. This is obvious. Some of these bills of lading antedated the date of their use with plaintiff by ten months and a bill of lading for such a commodity as wheat covering a comparatively short distance of transportation presented ten months after the wheat was shipped would be bound to excite the suspicion of any reasonably cautious person. As we understand it, this is not denied. Plaintiff's counsel nowhere disputes it. Therefore, if these bills of lading had been presented in their original form they would not have been accepted and defendant's omission to take them up would not have resulted in damage to the plaintiff. The act which made them available for use and which justified the plaintiff in accepting them as

security was the conceded crime of the consignee in changing the dates of the bills of lading so as to take them out of the class of " spent bills " and to confer upon them an appearance of genuine bills outstanding in accordance with ordinary custom. As I say this criminal act made it possible to use them; without it they could not have been used and the defendant's omission would have resulted in no harm.

Under these circumstances I fail to see how it can be said that its omission was the proximate cause of plaintiff's injury. In the first place it has been found as matter of fact that it was not such proximate cause and ordinarily it is to be determined as a question of fact whether there has been such a connection between cause and effect as to make the former proximate. (*Milwaukee & St. Paul Ry. Co.* v. *Kellogg,* 94 U. S. 469, 475.) But if we disregard this particular finding of fact we then have it on other findings that between defendant's omission and plaintiff's injury there has intervened the criminal act of a third party without which the injury could not have occurred. There has been produced a great amount of legal literature and numberless opinions on this subject of proximate cause which it is impossible and undesirable to attempt to review. But I think that there is one fundamental rule which has been clearly established in the discussion of the subject which is decisive of this case, and that is the one that the act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act; that if the consequences were only made possible by the intervening act of a third party which could not have reasonably been anticipated then the sequential relation between act and results would not be regarded as so established as to come within the rule of proximate cause. (*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, 260, 261;

*Linning* v. *Ill. Cen. R. R. Co.*, 81 Iowa, 246, 251, 252; *Trapp* v. *McClellan*, 68 App. Div. 362, 365, 366; *Milwaukee & St. P. Ry. Co.* v. *Kellogg, supra*, pp. 474, 475; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Hoffman* v. *King*, 160 N. Y. 618, 627.)

In *Hoffman* v. *King* (*supra*) the rule is stated as follows: " The damage must be the proximate result of the negligent act.   It must be such as the ordinary mind would reasonably expect as a probable result of the act, otherwise no liability exists."

In *Laidlaw* v. *Sage* (*supra*) the headnote fairly states the rule as laid down in the opinion that " The proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred; and the act of one person cannot be said to be the proximate cause of an injury when the act of another person has intervened and directly inflicted it."

In *Milwaukee & St. Paul Ry. Co.* v. *Kellogg* (*supra*) it is written: " But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been forseeen in the light of the attending circumstances."

When we come to the application of this rule to the present case it sustains the judgment which has been rendered.   Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of a crime by some third party.   It is said, however, that in view of the penal statute which has been referred to and of the other facts appearing in the record defendant ought to have anticipated that if it left these bills of lading outstanding they might be fraudulently used and that this would be a crime and that, therefore, it should be charged with anticipation of the

## 432 Saugerties Bank v. Delaware & Hudson Co.

crime which has been committed. In my opinion this course of reasoning cannot be sustained. It might very well be that the defendant in leaving the bills outstanding might be charged under a question of fact with anticipation that they might be presently used, although the wheat had been delivered. We know that this kind of wrongdoing is not infrequent and a party might be charged with the obligation to foresee it. That, however, is not the offense about which we are talking. Bills of lading which had become absolutely stale and useless were resurrected into a condition of life by the crime of forgery and there is nothing to indicate that this offense is so common that the defendant ought to have anticipated it. Certainly it cannot be said as matter of law that it ought to have anticipated what took place and there not only is no finding of fact that it should have anticipated it but the findings and the refusals to find are directly opposed to any such theory as that.

In my opinion it is impossible fairly and logically to escape the principles and binding force of *Mairs* v. *Balt. & O. R. R. Co.* (175 N. Y. 409), as leading to an affirmance of the judgment which has been rendered. In that case a carrier on delivery of goods failed to take up a bill of lading issued therefor which although not marked " non-negotiable " was in fact non-negotiable. The bill was subsequently altered so as to make it negotiable and it was transferred to a *bona fide* transferee. It was held that while the carrier was probably guilty of a criminal offense under the statute already referred to, there could be no recovery by the subsequent transferee of damages because of the illegal act of the carrier unless it had suffered direct and appreciable damages as a result of the illegal act, and it was held that the omission of the carrier was not the proximate cause of injury but that the cause of this was the criminal act of forgery performed upon a bill of lading whereby it was made to appear to be negotiable. In other words, the omission of the carrier

was not the proximate cause of damages when there had been the criminal intervention of a third party which made it possible to perform the act causing the damages.  What was said in that case seems to me precisely to fit the present one.  It was said: "It is, therefore, apparent that the plaintiff could not have been induced to part with any property or make loans upon this bill of lading had it remained in the form in which it was originally executed.  He was induced to take it for the reason that it appeared to be negotiable.  He was deceived by reason of the forgery and for this the defendants were not responsible.  The forgery was not the direct or proximate result of the omission to take up the bill of lading, but was the independent and felonious act of another person." (p. 414.)

For these reasons I think that the judgment appealed from should be affirmed.

ANDREWS, J. (dissenting).  In the summer and fall of 1909 certain bills of lading were issued to the Durant & Elmore Company which was named therein as consignor, consignee and party to be notified, covering the shipment by rail of twenty-two carloads of grain from Buffalo to Portland, Maine.  These bills were in the " order form " and contained the provision that " The surrender of the original bill of lading properly endorsed shall be required before the delivery of the property."  The cars containing the grain were transported by the railroads issuing the bills over their lines from Buffalo and were finally delivered to the defendant which carried them to Oneonta.  There, Durant & Elmore reconsigned the grain to other destinations and the grain was delivered as directed by the consignor prior to January 1st, 1910.  Such delivery was made, however, without requiring the surrender of the bills of lading.  They were retained by the Durant & Elmore Company.

28

On May 17th, 1910, the plaintiff loaned the Durant & Elmore Company $15,000 and as collateral security for such loan it received these retained bills of lading covering grain for the apparent aggregate value of $15,550. Before receiving these bills, however, they had been altered by the Durant & Elmore Company. The original dates in 1909 had been erased and new dates in April, 1910, had been inserted in each. Evidently the borrower believed that suspicion would be aroused if bills bearing the original date had been presented as collateral to the loan. The plaintiff when it accepted these bills as collateral did so in good faith with no knowledge or information of the change of dates or that the goods covered by the bills had been delivered. The Durant & Elmore Company became insolvent and the loan to the plaintiff has been only in part paid. There remains due something more than $8,000.

After the insolvency the plaintiff presented to the defendant the bills of lading in question and demanded from it the grain described therein. The defendant refused stating that the grain had already been delivered. Thereupon the plaintiff brought this action to recover the amount still due it from the Durant & Elmore Company. The trial court dismissed the complaint on the ground that the bills of lading were " spent bills; " that when presented to the plaintiff they were forged and that the failure to require their surrender was not the proximate cause of the plaintiff's loss. This result was affirmed by the Appellate Division, two of the justices dissenting.

In my opinion this result cannot be sustained. When these bills were issued our Penal Law provided that a carrier who delivers to another any merchandise for which a bill of lading has been issued, unless it bears upon its face the words " non-negotiable," except upon surrender of the bill for cancellation, is punishable by fine or imprisonment or both. (Sec. 365.) One of the

purposes of the statute, as we said in *Colgate* v. *Pennsylvania Co.* (102 N. Y. 120), is to protect the innocent against " spent bills " which are susceptible of a wrongful or fraudulent use. Only by surrender and cancellation can fraud be prevented. The existence of such bills is a source of danger. They on their face import the possession by the carrier of the merchandise described. Unchanged they may be used to deceive. One who takes such a bill in good faith when the goods have in fact been delivered may well complain. The carrier has failed in the duty imposed upon him by statute for the protection of the public and the act may be the basis of a civil action by an individual to recover damages if he has been injured in his person or property and the damages suffered are the direct and proximate result of the illegal act. (*Mairs* v. *Balt. & O. R. R. Co.,* 175 N. Y. 409). If, therefore, these bills had been negotiated within a reasonable time after the shipments had been made to one taking them in good faith and without notice, a recovery could have been had. (*Burnham* v. *Cape Vincent S. Co.,* 142 N. Y. 169.) The act of the carrier made possible the loss that ensued and that the use made by the holder of the bills is criminal in fraudulently negotiating them is no answer to the claim. The original default is clearly the proximate cause of the result.

Nor is the original act any less the proximate cause if to the crime of negotiating the " spent bills " the date of the bill is altered and so the crime of forgery is added. The mere intervention of a crime does not break the sequence of cause and effect if the crime might reasonably have been foreseen when the original default occurred. Always the outstanding bill carries this possibility. Always there is a chance that it may be fraudulently negotiated. The change in the date renders it more probable that such negotiation may be successfully accomplished. It renders the danger more pressing but simply adds to the danger that already existed.

As we have said in other connections, we can give no definition of the words "proximate cause" applicable everywhere and under all conditions. Generally, however, the question is whether the act of the defendant gave rise to the stream of events which culminated in the injury. Was the course of the stream deflected? Was it forced into new and unexpected channels by the act of a third person? (*Donnelly* v. *Piercy Contracting Co.*, 222 N. Y. 210.)

In the case of *Mairs* v. *Balt. & O. R. R. Co.* (*supra*) that was the case. The act of the defendant in leaving uncollected a non-negotiable bill taken in itself created no danger to others. That danger arose because of the act of another in so altering the bill as to make it negotiable. Until that was done it was a piece of paper as useless as were the blank forms of bills of lading kept in the carrier's files. Here the very existence of the bill outstanding carried a potency of danger. If in its original form when the plaintiff accepted it the mere carelessness of the bank in omitting to notice its date, while it might bear upon its good faith, would have been no defense. The alteration of the date, as has been said, merely increased the danger which already existed and which was the result of the wrongful act of the defendant. The result that followed was the natural and proximate result of that act.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

HOGAN, POUND and MCLAUGHLIN, JJ., concur with HISCOCK, Ch. J.; CARDOZO and CRANE, JJ., concur with ANDREWS, J.

Judgment affirmed.