**ALLIED FINANCE COMPANY, Appellant,**

**v.**

**FORD MOTOR COMPANY, Appellee.**

**No. 15515.**

Court of Civil Appeals of Texas.

Dallas.

July 10, 1959.

Rehearing Denied Oct. 2, 1959.

Locke, Locke & Purnell, and J. L. Shook, Dallas, for appellant.

Leachman, Gardere, Akin & Porter and Gordon H. Rowe, Jr., Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal by Allied Finance Company from a non obstante veredicto judgment that appellant take nothing in a suit against Ford Motor Company.

Appellant sought to hold appellee liable on two "Manufacturer's Statements of Origin to a Motor Vehicle", which statements automobile manufacturers are required under Art. 1436–1, Secs. 22 and 28, Vernon's Ann.Penal Code, to make in connection with the sales in Texas of new automobiles.

These statements are sometimes referred to as "manufacturers' certificates," and sometimes as "automobile birth certificates". The statements are ordinarily issued to dealers upon the purchase by the dealers of new automobiles from the manufacturer. When the dealer sells a car to a customer the accompanying manufacturer's statement pertaining to the car is endorsed by the dealer to the retail purchaser of the car. The retail purchaser thereafter presents the statement together with his application for a title certificate to the county tax collector where the car was sold, and the tax collector issues his receipt acknowledging that the papers have been surrendered to him and the necessary fees paid. The papers are then forwarded by the tax collector to the Highway Department at Austin, Texas, which Department in ordinary course of business processes the papers, and if the papers are found in order, the Department issues a certificate of title made out in the name of the purchaser.

In the case now before us one Llano H. White, a long time employee of Ford Motor Company, somehow came into possession of two manufacturer's certificates which had been executed in blank by the agent of Ford Motor Company. The name of a Texas automobile dealer was later wrongfully filled in on the two certificates and the blanks were wrongfully filled out to show that two certain described automobiles had been purchased by Llano H. White from the dealer. The truth was that Llano H. White had not purchased the automobiles. They had been sold and delivered by Ford Motor Company to other dealers outside the State of Texas in States which do not have a certificate of title law. Nevertheless Llano H. White

caused the manufacturer's statements bearing the forged endorsements of the purported automobile dealer to be presented with his application for title certificates to the appropriate tax collectors, who issued him their receipts, and forwarded the papers to Austin, Texas, to the State Highway Department.

On the basis of the tax collectors' receipts Allied Finance Company loaned money to Llano H. White, taking mortgage on each of the two cars as security for the loans. There is testimony that this is the usual procedure for the Finance Company in making loans, as it is well known that tax collectors will not issue receipts unless an applicant for a title surrenders a manufacturer's certificate to the tax collector along with his application; and that the State Highway Department will not issue a title certificate unless a manufacturer's certificate accompanies the application.

A short time later the Texas Highway Department issued two certificates of title showing Llano H. White to be the owner of the automobiles and Allied Finance Company to be the holder of first lien mortgages against them. After making several monthly payments on the cars Llano H. White defaulted and his fraud was discovered.

In its First Amended Petition Allied Finance Company alleged that though manufacturer's statements of origin do not come within the terms of the Negotiable Instruments Act, Vernon's Ann.Civ.St. art. 5932 et seq., they are in the nature of negotiable instruments; that when put into trade and commerce by the manufacturer, or permitted to be executed, issued and delivered, they are to be treated as negotiable instruments and as the manufacturer's guaranty or warranty of the existence and transfer to the persons named of actual motor vehicles; that appellant relied on the certificates of title based on the surrendered manufacturer's statements; and that Ford Motor Company was liable having "created, issued, or permitted to be issued apparently

valid manufacturer's certificates upon which certificates of title held by appellant were based, * * * appellee's liability for such manufacturer's certificates being absolute."

The trial of this case took an unusual turn. Appellant had not in its pleadings sought to recover on the theory of negligence. However, the court during the trial let it be known that he intended to submit issues of negligence to the jury. Appellant thereupon reluctantly requested and was granted permission to file a trial amendment alleging that appellee was negligent in allowing Llano H. White to have access to the executed blank forms of manufacturer's certificates and that such negligence was a proximate cause of appellant's loss. The court's charge submitted the case on the theory of negligence. Both appellant and appellee objected to the submission of negligence issues.

Appellant Finance Company's objections to the court's charge are much too lengthy to copy here in full, but we reproduce this excerpt: "Plaintiff objects and excepts to Special Issue No. 1 for the reason that it requires the Plaintiff to secure a finding from the jury as to the Defendant's negligence, whereas Plaintiff's theory of the case as expressed in its amended pleadings on which it went to trial is that negligence is not involved as a fact issue in that: a. The duty, responsibility and liability of the Defendant, Ford Motor Company, is absolute if it permitted a signed certificate of origin on a motor vehicle to be used in such manner as to cause loss and damage to any party relying on the fact of the existence of such certificate of origin or manufacturer's certificate. b. Plaintiff insists that its theory that the liability of a manufacturer of a motor vehicle based on the issuance of a certificate of origin or manufacturer's certificate is absolute and does not depend on whether such certificate was issued rightfully or wrongfully or because of failure to use ordinary care or any other reason." Similar objections were made to the submission of other negligence issues.

The court overruled both appellant's and appellee's objections to the charge.

The jury answered all negligence, contributory negligence and proximate cause issues in favor of appellant. Later upon motion of appellee the court rendered judgment for appellee non obstante veredicto. So appellant is now placed in the somewhat awkward position of contending that it is entitled to judgment based on a jury verdict on issues to which it had objected on the ground that they submitted an erroneous theory of the case.

Before passing on the several alleged points of error raised by appellant we must amplify our account of the facts.

Edward R. Mackey, General Accounting Supervisor, for Ford Motor Company, Dallas Branch, testified that in 1953 his department had charge of the preparation and issuance of manufacturer's certificates on new automobiles; that about 70,000 were issued in Texas in 1953; that they were issued only on cars sold to dealers in certificate of title States; that they were executed in blank by the Company's agent, not by signing them personally but by a mechanical reproduction process; that the manufacturer's certificates were not numbered; that at night they were kept in a special file under special lock and key; that they were taken out each day and distributed to various desks where billing clerks filled them out with the necessary data pertaining to each car sold, including the dealer purchaser's name and address, and the style and serial number of the car; that it was customary, if a car had been sold to a Texas dealer, to place the manufacturer's certificate with the invoice pertaining to each car on the front seat of the car as it neared the end of the assembly line; that after finishing the assembly line each car was taken to a delivery gate where a convoy company received it and the accompanying papers, receipted for them, and transported both car and papers to the purchasing dealer.

Mackey also testified that the two manufacturer's certificates involved in this case had not been filled out by anyone in his department, and had not been issued to Llano H. White or anyone else; that Llano H. White, foreman of the assembly line garage, had been employed by the Ford Motor Company for 25 years; that he had no duties in connection with the preparation, issuance, or handling of manufacturer's certificates; that his duties were simply to check each car at the end of the assembly line and to take it to the garage for further work if anything were found defective about the car.

B. F. White (not related to Llano H. White) testified that he is a Ford dealer in Stanton, Texas, under the name of White Motor Company, that he did not in fact purchase either of the two cars described in the manufacturer's certificates in which his company is shown to be the purchaser; that his signature on the back of each certificate purporting to show his endorsement of the certificate to L. H. White is not his signature, but is a forgery.

Witnesses in behalf of Allied Finance Company testified that the first loan to Llano H. White was made February 17, 1953 in the amount of $2,079.36 payable $86.84 per month; that the second loan was made August 12, 1953 in the amount of $1,872 payable $78 per month; that the Finance Company had dealt with Llano H. White before, and his record for keeping up his payments was good; that in neither instance had the Finance Company checked to see whether Llano H. White actually had possession of the car in question, nor had it checked with White Motor Company of Staton, Texas, to see whether that Company had actually sold the automobile to Lano H. White, or had endorsed the manufacturer's certificate to him; that the Finance Company had not actually seen either of the manufacturer's certificates at the time the loans were made, but had relied on the tax collector's receipts.

The undisputed evidence shows that in April 1954 Llano H. White pled guilty in Titus County, Texas and was sentenced to terms in the penitentiary of five years each for swindling in two cases involving loans from a bank in Mt. Pleasant, Texas. Neither Allied Finance Company nor Ford Motor Company were complaining witnesses in the Titus County cases, nor did they file complaints against Llano H. White in connection with his criminal conduct in connection with the two loans involved in this appeal.

In its first nine points on appeal appellant asserts in substance that the trial court erred in disregarding the jury's findings, which findings supported by evidence established that appellee was negligent in permitting its employee Llano H. White to have access to the manufacturer's certificates, that such negligence was a proximate cause of appellant's loss, and that appellant was not guilty of contributory negligence in failing to inspect the collateral purportedly offered by Llano H. White. Appellant further says that the court erred in holding that appellee was not liable for the dishonest acts of Llano H. White; that the jury verdict shows that there was no new and independent cause of appellant's loss; and that appellee, having trusted its own employee first and most should suffer for the employee's dishonesty, and appellant, as an innocent party, should recover.

█ It is our opinion that in view of the undisputed facts of this case, appellant is not entitled to recover on the theory of negligence. We are aware of holdings to the effect that one who has entrusted another with the indicia of ownership of property may, under some circumstances, be estopped to assert his rights against an innocent purchaser for value who, in dealing with the property, has relied upon such apparent ownership or authority. Continental Credit Corporation v. Norman, Tex. Civ.App., 303 S.W.2d 449; 19 Amer.Jur.

694; 31 C.J.S. Estoppel § 102, p. 323. But such holdings are not applicable here. In this case appellee, Ford Motor Company did not entrust or deliver the manufacturer's certificates to Llano H. White or anyone else. Under the undisputed facts there must certainly have been an unauthorized taking of the documents. Then there was a fraudulent filling of the blank forms so that a named dealer was shown to have purchased two automobiles which in fact he had not purchased. Then the dealer's name was forged to endorsements of the manufacturer's certificates purporting to show that the dealer had sold the automobiles to Llano H. White. Then Llano H. White in his application for title certificates falsely represented to the Tax Collectors of Collin and Dallas Counties respectively that he had purchased the cars; and also in his dealings with Allied Finance Company he falsely represented that he was the owner of the cars. Thus the wrong suffered by Allied Finance Company was accomplished by not one, but several criminal acts.

We quote from the opinion of our Supreme Court in McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144, 146: "Defendants also contend that plaintiff was negligent in taking an assignment of the certificate of title in blank, and that in so doing he made it possible for Linney to present the appearance of being the owner of the motor vehicle, and as a consequence plaintiff is now estopped to contend that Linney was without authority to sell the vehicle. We recognize that ordinarily where one clothes another with the indicia of ownership of personal property, he may be estopped to assert title to the property as against a purchaser from one having such indicia of title. 21 C.J. 1176; 31 C.J.S. [Estoppel] § 105, p. 332; 37 Tex.Jur. 489. But in order for such a rule to be applicable there must be some negligent or wrongful act or omission on the part of the true owner conferring on the person selling the goods the appearance of ownership. 59 C.J. 639. Such a doctrine is not applicable in this instance because Croan did not intrust Linney with the possession of either the certificate of title or the motor vehicle. Linney stole both of them."

We quote also from the opinion by Judge Funderburk of the Eastland Court of Civil Appeals in Dublin Nat. Bank v. Chastain, 167 S.W.2d 795, 797: "Registration acts do not protect a purchaser holding under a registered title if a link in said title be a forgery. Proof of the forgery of a link of title is tantamount to proof that the claimant of such title has none, or, in other words, that he is not the owner of the property."

We have not found a case nor have we been cited to a case which is exactly in point with the facts in the case now before us. But nearest in point is the New York case of Benenson v. National Security Co., 260 N.Y. 299, 183 N.E. 505, 85 A.L.R. 79, from which we quote: "The plaintiff now seeks to hold the defendant for his consequent damages, upon an allegation that it was the result of the carelessness and negligence of the defendant in permitting 'fully executed forms and documents by which its bonds and undertakings are customarily authenticated to lie about and be exposed in its offices thereby rendering such forms and documents available to strangers and to those having no authority to make use of the same', * * * but the defendant was under no duty to the world at large to safeguard its own property from theft at least, unless the possibility that the property would be stolen and then used by the thief to injure another constituted a hazard which a reasonable man would have foreseen and guarded against. 'Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of a crime by some third party.' Saugerties Bank v. Delaware & Hudson Co., 236 N.Y. 425, 431, 141 N.E. 904, 905. Even where certificates of stock, signed in blank by duly authorized officers, were stolen from the corporation by a servant who had access to them, and sold to innocent purchasers, no recovery

has been permitted against the corporation for its failure to safeguard the public from the hazard of being defrauded in such manner. * * * The only act complained of is the defendant's failure to guard its executed forms and documents against theft. Even if stolen, they could be used to the damage of others only if thereby they came into the possession of some person who could profit by inducing another to accept a surety bond, and who forged such a bond and attached the stolen documents in order to give the bond the appearance of authenticity. A hazard for strangers arising from two crimes committed by one of the small class who could profit by such crimes is too remote to place upon a reasonable man a duty to foresee and guard against." See also Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843; Commercial Credit Co. v. American Mfg. Co., Tex.Civ. App., 155 S.W.2d 834; Ball Bros. Trucking Co. v. Sorenson, Tex.Civ.App., 191 S.W.2d 908; Clanton v. Thigpen, Tex.Civ.App., 226 S.W.2d 850. We overrule appellant's first nine points on appeal.

In its tenth and eleventh points appellant argues that appellee is bound by the manufacturer's certificates regardless of negligence, because its liability is absolute when its certificates, valid on their face, are surrendered to tax collectors and persons receive certificates of title from the Texas Highway Department based on said manufacturer's certificates. We are unable to agree with appellant. The cases heretofore cited and quoted from negative appellant's contention that the indicia of title based on stolen or forged documents is absolute even in the hands of innocent parties. Appellant's tenth and eleventh points are overruled.

Appellant's twelfth point is that since the amount of its loss was less than the value of the automobiles as found by the jury, the court should have entered judgment for the full amount of the loss. Since we have held that appellant was not entitled to recover in any amount, we overrule the twelfth point.

The judgment of the trial court is affirmed.