## (March 28, 1960)

LAVINA FISHER, by CORLOUS FISHER, Her Guardian ad Litem, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 31950.) CORLOUS FISHER, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 31949.) BERNARD BLUM, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 31948.) — Appellants appeal from a judgment of the Court of Claims dismissing their automobile accident claims on the ground there was no negligence on the part of the State which caused or contributed to the happening of the accident. Route 29 runs in a general easterly and westerly direction and near East Galway in Saratoga County is intercepted by a road running southerly therefrom. West of the interception Route 29 is concrete and 24-feet wide and as the road continues in an easterly direction within a short distance it narrows to a 16-foot concrete road. There is a 6-foot deceleration lane on the south side of Route 29 running across the interception and continuing on for a distance of 181 feet to "zero". From the photographs it would appear that there was no "zero" as found by the court but rather a continuation of approximately an 18-inch portion of asphalt along the south side of the concrete to where the accident happened. During the trial this was referred to as a continuation of the road and as a shoulder. It would appear there might be some basis for finding it an extension of the road as on the north or opposite side thereof there is the same 15–18 inches of asphalt and the remainder of the 5-foot shoulder is gravel and a State employee testifying on behalf of the claimants as to the condition said: " You see, there was sort of a widening up and down through there." Beyond the macadam on the south side of the road there was a drainage ditch which carried surplus water in an easterly direction. On July 12, 1953, while still daylight but about 5:25 P.M., the weather being misty and rainy, the claimant Bernard Blum was operating his automobile in an easterly direction on Route 29, never having previously travelled the road. He was accompanied by Lavina Fisher (now Mrs. Blum) a passenger riding in the right-front seat. There were no warning signs of "road narrowing" and as he proceeded in an easterly direction at approximately 35–40 miles an hour — there were " slow " signs — he travelled on the deceleration lane and continued along the macadam approximately 500 feet until his car swerved in a northerly direction and collided with an automobile proceeding in a westerly direction on its own side of the road. His testimony was that he saw this car approaching from the opposite direction. It appeared to him that it was veering to his

side of the road and for that reason he continued driving partly on the concrete and partly on the macadam. The white dividing line was south of the center of the road. Blum further described the happening of the accident as follows: " Q. All right. Then, Mr. Blum, tell us then what happened as you proceeded along? A. Well, as we came upon the intersection and went through it, I found that my right wheels were on the outlying edge and which I took to be part of the road because of the distinct — Mr. Murphy: I object to anything because of, and I move to strike it out. By Mr. Abdella: Q. Well, all right. Now, Mr. Blum — A. May I clarify something? Well, I found my right wheels on the outlying edge of the road which I took to be part of the road. Q. Deceleration lane that you hear Mr. Fonda talk about? A. Yes, sir. Yes, I believe that's what it is called. Q. Go ahead. A. And going through the deceleration lane and continuing on further, I realized that the right wheels of my car were balancing moderately as though the pavement was somewhat rough. * * * Q. Now, did you see any vehicle coming in the opposite direction at that time? A. Yes, sir, upon finding — well, at the spot about 50 feet after the beginning of the new top pavement, I observed a car coming toward us. * * * Q. Did you later ascertain that car to be the car of Homer Cole which collided with you? A. Yes, sir, it was. Q. And what did you observe the Cole car do as it came along and on which side of the road was it when you first saw it? A. When I first saw it, Mr. Abdella, it was on his own side. Q. And as it approached you, Mr. Blum, did you make any observation as to that car? A. It appeared to come closer within my lane as it approached. * * * Q. What did you do when you made that observation, Mr. Blum? A. *I continued driving in the lane at which I had been driving.* Q. Then what happened? A. Well, I felt as though my right front wheel dropped down into something and wrenched the wheel to the right and the steering out of my hands and I pulled it back and hit — Q. * * * A. Well, the car seemed to spin or flip out and go across the road perpendicular to the highway. * * * Q. * * * What happened when you got perpendicular to the highway? A. We were in an accident with the Cole car." (Emphasis supplied.) The court decided that no emergency existed which required the Blum car to be driven off the highway on the shoulder and that the highway, including the shoulder, was free from dangerous conditions and defects and was maintained in a safe condition for travel. That Blum was negligent in the operation of his automobile is established by the record and the court's finding in that respect was proper. There remains, however, as to the passenger whether Blum was solely responsible as found by the court or whether there was negligence also on the part of the State. If so, was it a concurring cause of the accident or a remote — as distinguished from proximate — cause of the accident which would absolve the State of liability? (*Saugerties Bank* v. *Delaware & Hudson Co.,* 236 N. Y. 425, 430.) Neither of the claimants had knowledge that the so-called deceleration lane was 181 feet in length and from the photographs it appears they would have a right to assume that the 15–18 inches of macadam extending to the point of the accident was intended as road widening or extension. The court found there was no culvert beneath the driveway easterly of the accident but refused to find that it obstructed the flow or interfered with the drainage along the south side of Route 29. A witness for claimants testified that proper construction called for " Either by box or pipe culverts or a spooned drainage ditch to continue the drainage area ". He further testified that there was disintegration and erosion of the macadam due to the drainage situation which he said was improperly constructed. The photographs show what appears to be a substantial break or gouge in the macadam near where the accident

happened which might be significant on the theory of defective shoulder or highway and as to proper drainage. While the record is not properly developed as to these factors, it would appear that a prima facie case was established as to negligence of the State which may be further developed or rebutted on a new trial. The circumstances are such that as to the passenger claim, in the interest of justice, there should be a new trial. The judgment is affirmed in the action of Bernard Blum against the State of New York, No. 31948, without costs. In the claim of Lavina Fisher (Blum), No. 31950, the judgment is reversed on the law and the facts, and a new trial directed, with costs to abide the event. Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ., concur.